# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

In the Matter of R.K., by and through her mother and next
friend, J.K;

and W.S., by and through her mother and
next friend, M.S.,

on behalf of those similarly situated,

      Plaintiffs,

v.                                    Case No. _____

GOVERNOR BILL LEE, in his official
capacity as GOVERNOR OF TENNESSEE,
WILLIAMSON COUNTY BOARD OF EDUCATION,
and FRANKLIN SPECIAL SCHOOL DISTRICT,

      Defendants.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS
OF THE AMERICANS WITH DISABILITIES ACT AND
SECTION 504 OF THE REHABILITATION ACT**

---

Plaintiffs, school-age children with disabilities that render them medically vulnerable to COVID-19, by and through their parents and next friends, bring this action for declaratory and injunctive relief on behalf of themselves and a class of similarly situated children with disabilities who are at severe risk of illness and injury due to their disabilities and allege as follows:

# I. INTRODUCTION

1.      This case involves students with certain disabilities[1] who, *by reason of* these disabilities, are more medically vulnerable to severe infection and/or death from COVID-19.  For these students to enjoy safe passage into their existing school buildings, classrooms, and extracurricular activities,   they require the reasonable modification of universal masking untethered to a purely voluntary parental opt-out.

2.      The Governor's Executive Order 84, along with the stance of Williamson County Board of Education and the Franklin Special School District, permits a voluntary opt-out of masking for any child based purely upon parental choice.  Such an opt-out—exercised by large numbers of students—is so gaping that it has nullified the rights of students with disabilities who require masking of others in order to enjoy safe, fundamental, non-discriminatory access to their public institutions. Accordingly, court action is necessary to institute a mask mandate *without* a purely voluntary opt-out.  This will eliminate the barrier to safe access created by Executive Order 84, and the stance of Williamson County Board of Education and Franklin Special School District, by modifying rules, policies and practices.

3.      With the surge of the Delta variant, the necessity for such universal masking without a purely voluntary opt out is greater now than it has ever been. Despite infections of COVID-19 surging throughout the state of Tennessee and Williamson County and record numbers

---

[1]      The disabilities include: (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

of pediatric cases of COVID-19, Defendants Governor Bill Lee, Williamson County Board of Education, and Franklin Special School District have failed to make or permit school districts to afford the reasonable accommodation of implementing a universal masking policy that does not contain a voluntary opt out.

4.      Defendants' actions have pitted children against children, while placing the health and safety of medically vulnerable children with disabilities in danger.  This violates the federal rights of those children under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

## II. JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. §§ 2201–2202.

6.      Venue is proper in the United States District Court for the Middle District of Tennessee, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred and continue to occur in this district.

## III. PARTIES

7.      R.K., by and through her mother and next friend, J.K., brings this action on behalf of herself and those similarly situated.  R.K. is a thirteen-year-old girl who attends Williamson County Schools.  R.K., who has been identified by her school as a student with a disability, has Down syndrome.  R.K. is a resident of Williamson County, Tennessee.

8.      W.S., by and through her mother and next friend, M.S., brings this action on behalf of herself and those similarly situated.  W.S. is a seven-year-old girl who attends the Franklin Special School District.  W.S., who has been identified by her school as a student with a disability, has type-1 diabetes.  W.S. is a resident of Williamson County, Tennessee.

9.      Defendant Bill Lee is the Governor of the state of Tennessee and is the head of the Officer of the Governor.  Defendant Lee enacted the executive order at issue in this action. Defendant Lee is sued in his official capacity as the Governor of the State of Tennessee and as head of the Office of the Governor, and he may be served with process by serving the State Attorney General Herbert Slattery III, Office of the Attorney General either by mail to P.O. Box 20207, Nashville, Tennessee 37202, or in person at 500 Charlotte Avenue, Nashville, Tennessee 37219. The state of Tennessee and the Office of the Governor are public entities within the meaning of the Americans with Disabilities Act, 28 C.F.R. § 35.104, and recipients of federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

10.      Defendant Williamson County Board of Education is a "distinct legal entity with the capacity to be sued for injuries incurred as a result of the execution of its statutory duties and responsibilities."  Thus, it is a "public entity" within the meaning of the Americans with Disabilities Act, 28 C.F.R. §35.104, and receives federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. §794(a).  Williamson County Board of Education may be served with process by serving Jason Golden, Superintendent of Williamson County Schools, at 1320 West Main St., Franklin, TN 37064.

11.      Defendant Franklin Special School District (FSSD) is a "distinct legal entity with the capacity to be sued for injuries incurred as a result of the execution of its statutory duties and responsibilities."  Thus, it is a "public entity" within the meaning of the Americans with Disabilities Act, 28 C.F.R. §35.104, and receives federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. §794(a).  FSSD may be served with process by serving David Snowden, Superintendent of FSSD, at 507 New Hwy. 96 W, Franklin, TN 37064.

# IV. FACTS

## A. THE STUDENTS WITH DISABILITIES

12.     R.K. is a thirteen-year-old girl who attends seventh grade in Williamson County Schools. R.K. has Down syndrome, which places her at high-risk for adverse reaction to COVID-19 infection including death. Her cognitive abilities are substantially limited. R.K. has been vaccinated, but R.K. has a history of such vaccines being less efficacious due to Down syndrome. With appropriate accommodations of universal masking, she is capable of attending school in-person like non-disabled peers.

13.     W.S. is a second grader in the Franklin Special School District. W.S has type-1 diabetes. Her diabetes places her at significant risk of adverse reaction or death from infection from COVID-19. In fact, W.S. tested positive for COVID-19 after attending school with unmasked children. The infection adversely affected her blood sugar, requiring 14 straight intensive hours of effort and consultation with her treating physician to regulate her blood sugar levels back to a normal range. W.S. is substantially limited in endocrine function. With appropriate accommodations of universal masking, she is capable of attending school in-person like non-disabled peers.

## B. COVID-19 AND ITS DELTA VARIANT SPREAD THROUGH THE BREATH OF OTHERS

14.     COVID-19 is an extremely infectious and deadly disease that is transmitted from person to person.

15.     Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[2]

---

[2] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/ 2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye

16.     Asymptomatic carriers of COVID-19 can also transmit the disease.  Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("pre-symptomatic") may feel perfectly fine.  However, they are estimated to account for more than 50% of transmissions.[3]

17.     The current, most prevalent variant of COVID-19, known as the Delta variant, is extremely infectious and is spread much more readily than even the original SARS-CoV-2 strain.[4]

18.     Since June/early July 2021, the State of Tennessee has seen a dramatic increase in the number of COVID-19 cases, mostly driven by the rapid spread of the Delta variant.  For example, on July 14, 2021, Tennessee had an average positive test rate for COVID-19 of 6.3%.  As of September 11, 2021, that average positive test rate had grown to 19.60%.[5]  In that same time period, the average daily cases per 100,000 people in Tennessee has grown from 7 to 103.[6]

19.     During this period, the rate of infection among children has increased significantly.  For the week of August 22, 2021, cases among children aged between 0-18 years compromised 37.6% of all new COVID-19 infections in Tennessee.  For the week that followed, 31.4% of all new COVID-19 infections in Tennessee were pediatric cases.[7]

---

by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

[3] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, *available at* https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html

[4] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

[5] https://www.mayoclinic.org/coronavirus-covid-19/map/tennessee

[6] Id.

[7] https://www.tn.gov/content/dam/tn/health/documents/cedep/novel-coronavirus/datasets/Data-on-Cases-among-all-Children-0-18.pdf

20.     From June/early-July 2021, Williamson County saw a massive spike in COVID-19 infections.  On July 14, 2021, Williamson County had a seven-day average of 19 new COVID-19 cases.  That number increased to 332 new infections by September 6, 2021.

21.     Hospitals in the Middle District of Tennessee are near capacity for beds and staff treating COVID-19.   This includes Vanderbilt Children's Hospital, which has seen an unprecedented surge in the number of hospitalizations for COVID-19 among children.

22.     There is no cure for COVID-19.  The vaccine is also only currently approved for individuals 12 years and older and can prove less effective for those individuals with weakened or compromised immune systems who are unable to produce a robust immune response to the vaccine.

23.     School-aged children with certain disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions. According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[8]   And as with adults who face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[9]

24.     The schools located within Williamson County, Tennessee regularly serve students with these exact disabilities—moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune

---

[8] Centers for Disease Control, *COVID-19: People with Certain Medical Conditions*, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[9] Id.

systems impact a significant portion of the population. Asthma alone impacts 9.5% of Tennessee's school age children.[10]

## C. THE NECESSITY OF MASKING FOR SAFE ACCESS

25.     Washing hands, cleaning surfaces, introducing new air filters are some examples of modifications that may reduce some risk of COVID transmission.  But those are not enough for children with disabilities, and they are not even the most effective means.

26.     For school age children who are unable to be vaccinated or whose disabilities result in a less robust response to the vaccine, the risk of contracting COVID-19 is most successfully mitigated through universal masking and social distancing.  The ABC Science Collaborative, led by top physicians on the staff of Duke University, found that that masking was effective in preventing in-school COVID-19 transmission regardless of the physical distance maintained between children as part of social-distancing efforts.[11]

27.     Moreover, "when teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[12]  The cloth layer *blocks* the droplets from releasing into the environment, along with the microorganisms these particles carry.  To be more specific, masks block the large droplets ("20-30 microns and up") as well as finer droplets too.[13]

---

[10] Office of Policy, Planning and Assessment (2009). Childhood Asthma in Tennessee, 1997-2007. TN Department of Health, Nashville, Tennessee, p. 3, https://www.tn.gov/content/dam/tn/health/documents/Childhood_Asthma_Report_07.pdf

[11]     https://abcsciencecollaborative.org/wp-content/uploads/2021/06/ABCs-Final-Report-June-2021.06-esig-DB-KZ-6-29-21.pdf?fbclid=IwAR3XDNVh44k8mrrfd2rcJz8rm-zOdtmlouMDkt-Tt3P3zXicWQeeU5E6wA8

[12] Id.

[13]     Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, *available    at*    https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html (last visited Sept. 2, 2021).

28.     Thus, the CDC,[14] the American Academy of Pediatrics,[15] and Le Bonheur Children's Hospital and the University of Tennessee Health Sciences Center[16] have all recommended universal masking in schools in an effort to reduce the risk of transmission of COVID-19.

29.     Governor Lee agreed with this policy recommendation: **"If you want to protect your kid from the virus or from quarantine, the best way to do that is to have your kid in school with a mask."[17]**  However, the protection is not just for "your kid," but for "other kids too."

30.     Likewise, Tennessee Department of Health Commissioner, Dr. Lisa Piercy, has recently supported this recommendation: "There's not a single person that doesn't agree that keeping kids healthy and keeping them in the classroom is the best," she said. "One incredibly effective way to do that is for schools and for parents to use the best tool we have for unvaccinated children, and that's masking up their students."[18]

31.     Further, the Tennessee Attorney General has recognized both the constitutionality of a mask mandate as well as its necessity: "Here, the State's interest in protecting the safety of

---

[14]    CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html

[15]    https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/

[16]    https://www.lebonheur.org/files/patient-education-materials/Back-to-School%20Task%20Force%20Le%20Bonheur%20Children's%20UTHSC%20Recommendations%20Updated%20FINAL%20August%202021.pdf

[17]    Children now account for 36% of Tennessee's virus cases, *available at* https://www.wate.com/news/children-now-account-for-36-of-tennessees-virus-cases/

[18]    https://www.kfvs12.com/2021/08/25/gov-lee-recommends-children-wear-masks-schools/

the public would indeed be less effectively achieved without a mandate that requires the wearing of a face covering in public during the COVID-19 pandemic."[19]

32.     Accordingly, the entirely reasonable modification being sought in this case is *community masking:  protection of selves and others.*  Such a universal masking mandate has been successfully implemented in large public school districts, including Knox County implementing its mask mandate for the entirety of 2020-2021, without disruption, prior to the Governor's Executive Order 84.

### D.  A Purely Voluntary Opt-Out Of Masking Pits Children Against Each Other and Creates Serious  Risk of Injury and Death

33.     As schools have reopened, COVID-19 infection numbers among school aged children have continued to rise.[20]

34.     By mid-August 2021, WCS's middle schools had over 33% student and 30% staffing absences.[21]

35.     Williamson County Board of Education on August 10, 2021, voted to require masks for students, staff and visitors to the elementary grade levels, but allowed teachers who are distanced at least 6 feet to remove their masks.  It also allowed exemptions for religious and health reasons.[22]   Williamson County Board of Education has no masking requirement for non-elementary school children, teachers, staff, or visitors.

---

[19] https://www.tn.gov/content/dam/tn/attorneygeneral/documents/ops/2020/op20-14.pdf

[20]     https://www.kfvs12.com/2021/08/25/gov-lee-recommends-children-wear-masks-schools/ (noting on August 25, 2021 that there had been 14,000 pediatric cases in last seven days, with 1,300 emergency room visits)

[21] Ex. A: August 24, 2021 Letter to Senator Johnson, Representatives Casada, Ogles and Whitson from WCS and FSSD Superintendents.

[22] https://meeting.boeconnect.net/Documents/CustomMinutesForMeeting/566?meeting=490933

36.     Despite his clear understanding of the necessity of education and protecting the health and lives of children, Governor Lee on August 16, 2021 issued Executive Order No. 84 allowing parents to opt their children out of any mask mandate.

37.     This purely voluntary opt-out pits child-against-child, endangering the lives of children with disabilities.  Parents of school children with disabilities are forced to hope other parents will require masking, and not opt out.  But when they do opt out of masking, the children with disabilities are subjected to serious reactions or even death as a result of COVID-19 being spread through unmasked breathing, coughing and sneezing.[23]

38.     On August 23, 2021, the Franklin Special School District issued a mask mandate due to the rapidly rising numbers of COVID-19 infections in its schools.  The mask mandate, however, consistent with Governor Lee's Executive Order No. 84, allowed parents to opt-out their children from the mask requirement.

39.     By August 24, 2021, both WCS and FSSD reported that they had schools close to the "crisis point" of having insufficient staffing to keep the schools open due to the number of staff out due to infections with COVID-19.[24]  Despite the acknowledgement of the toll the pandemic was taking on its schools, WCS and FSSD refused to implement a school-wide universal masking requirement for students K-12 that did not contain an opt-out provision.

40.     The Plaintiffs have requested universal masking as an accommodation for their children with a disability, with J.K., mother of R.K., explaining the needs publicly to the WCS Board.

---

[23]     While Gov. Lee's Executive Order No. 84 was purportedly issued pursuant to Tenn. Code Ann. § 58-2-107, it was not issued to "address[] the dangers presented to this state and its people by" the emergency present by COVID-19 and thus exceed his legal authority under the statute.

[24] Ex. A: August 24, 2021 Letter to Senator Johnson, Representatives Casada, Ogles and Whitson from WCS and FSSD Superintendents.

41. Scores of children are opting out, *nullifying* masking, spreading COVID, and creating unnecessary risk of severe illness or even death for children with disabilities. Even with COVID-19 rapidly spreading through its schools, Williamson County Schools have seen 13,231 children opt-out of the mandatory masking policy-- 31.85% of the students.[25] FSSD has allowed children to opt-out of its masking requirement, and they have done so as well, though it has not published the number or rates of opt-out to the public.

42. At these schools, the named Plaintiffs and those similarly situated attend classes in close proximity to unmasked students, faculty, and staff.

43. Named Plaintiffs and those similarly situated use the same hallways, bathrooms, lunchrooms, and classrooms as their fellow-masked and unmasked classmates.

44. Named Plaintiffs are entitled to safe, fundamental and non-discriminatory access to their school buildings with masked teachers, custodians, and students.

45. The necessity for such masking is greater now than ever. Yet Governor Lee's Executive Order and the policies of Williamson County Board of Education and the Franklin Special School District allowing parents to opt-out of a universal mask mandate policy subjects children with certain disabilities to serious illness or even death by exercising their fundamental, non-discriminatory right to access their public institutions.

## V. CLASS ALLEGATIONS

46. Plaintiffs bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedures on behalf of themselves and a class of similarly situated individuals consisting of all students with disabilities that make them medically vulnerable to severe infection and/or death from COVID-19 and who attend public school in Williamson County, Tennessee (the "Class").

---

[25] https://www.wcs.edu/Page/8598

47.     The Class is defined as follows: all current and future K-12 students attending, or zoned to attend, public school in Williamson County, Tennessee during the coronavirus pandemic who are unable to obtain a vaccine either because of their age or for whom the vaccine is of limited efficacy due to their compromised or suppressed immune system, as well as all current and future children who attend school in Williamson County who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury. The "Under-Twelve Subclass" are all individuals who are members of the Class who are also under the age of twelve years and therefore ineligible to receive any vaccine for COVID-19 as currently approved by the FDA.

48.     This action has been brought and may properly be maintained as a class action under federal law. It satisfies the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

49.     Joinder is impracticable because (1) the Class is numerous; (2) the Class includes future members, and (3) the Class members includes many individuals who are incapable due to limited financial means of instituting individual lawsuits.

50.     Numerosity: On information and belief, there are well beyond the necessary number of children in the proposed Class to warrant class certification. Thousands of children in

Williamson County public schools have one or more of the listed conditions that make them medically vulnerable to severe reaction or death from infection by COVID-19.

51.     Commonality: Common questions of law and fact exist as to all members of the proposed Class, including: (a) whether the policies and practices of Governor Bill Lee, the Williamson County Board of Education, and the Franklin Special School District discriminate against the members of the Class in violation of the ADA and the Rehabilitation Act by preventing or refusing to provide for a reasonable modification of community masking under those laws.

52.     Typicality: The claims of the Named Plaintiffs are typical of those of the Class as a whole, including because (a) each Named Plaintiff is currently attending, or zoned to attend, public school in Williamson County, Tennessee and (b) the Named Plaintiffs' and all of the Class members' claims arise from the same wrongful acts, omissions, policies, and practices of Defendants, and are based on the same legal theories.

53.     Adequacy: The Named Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class. The Named Plaintiffs have no interests adverse to the interests of the proposed Class. The Named Plaintiffs retained counsel with experience and success in the prosecution of civil rights litigation. Counsel for the Named Plaintiffs know of no conflicts among proposed Class members or between counsel and proposed Class members. Plaintiffs' chosen counsel includes:

(a)     Bryce Ashby of Donati Law, PLLC. Mr. Ashby is a distinguished member of the Tennessee Bar, the Memphis Bar, the Federal Bar, and the American Bar Associations. His practice focuses on employment, civil rights, and labor violations committed by public and private actors specifically including municipal, state, and federal governmental entities and frequently include claims arising under the Civil Rights Act, Americans with Disabilities Act, the Rehabilitation Act. Mr. Ashby is counsel on two putative class actions arising out of violations of

the Trafficking Victims Protection Act and has handled multiple collective actions under the Fair Labor Standards Act as lead counsel. He is counsel for the similar putative class case in the Western District of Tennessee, *G.S. et al. v. Gov. Bill Lee et al.*, Case No. 21-cv-2552-SHL-atc (Judge Lipman).

(b)     Brice M. Timmons of Donati Law, PLLC. Mr. Timmons is a distinguished member of the Tennessee Bar, the Memphis Bar, the Federal Bar, and the American Bar Associations. His practice focuses almost exclusively on civil rights violations committed by public and private actors specifically including municipal governments, educational institutions, both public and private, jails, prisons, and private prison contractors, often including claims arising under the Americans with Disabilities Act, Individuals with Disabilities Education Act, and Section 504 of the Rehabilitation Act. Mr. Timmons has significant experience representing disabled, minor plaintiffs in suits against their caregivers and educational institutions. Mr. Timmons has handled and/or tried hundreds of cases during that time period. Mr. Timmons has also been appointed class counsel in two civil rights actions, including one arising under the Americans with Disabilities Act and is putative class counsel in an action arising under the Trafficking Victims Protection Reauthorization Act in the District of Wyoming in which he represents a putative class of former minor residents of facilities fraudulently purporting to treat mental health issues in minor children. Specifically, Mr. Timmons has been appointed lead class counsel in *Busby v. Bonner*, 2:20-cv-02359 (TNWD, 2020), in which, along with the American Civil Liberties Union and others, he represents a class of incarcerated persons who are especially vulnerable to COVID-19 on claims arising under various federal civil rights statutes including the Americans with Disabilities Act and in which he and his co-counsel received class certification prior to ultimately negotiating the most comprehensive consent decree achieved to date in the plethora of civil rights actions brought in response to the COVID-19 pandemic's impact on individuals medically vulnerable to COVID-19.

He has also been appointed lead class counsel in *Turnage v. Oldham*, 2:16-cv-02907 (TNWD, 2016) in which he represents a putative class of persons subjected to overdetention due to the employment of a faulty software package to operate the county jail and criminal courts in claims arising under 42 U.S.C. §1983 and Tennessee common law in which he and his co-counsel negotiated a settlement that has received preliminary approval and has been funded in the amount of $4.9 Million. He is counsel for the similar putative class case in the Western District of Tennessee, *G.S. et al. v. Gov. Bill Lee et al.*, Case No. 21-cv-2552-SHL-atc (Judge Lipman).

      (c)     Craig A. Edgington of Donati Law, PLLC. Mr. Edgington is a distinguished member of the Tennessee Bar and the Federal bar. Like Mr. Timmons, his practice focuses almost exclusively on civil rights violations committed by public and private actors specifically including municipal governments, educational institutions, both public and private, jails, prisons, and private prison contractors, often including claims arising under the Americans with Disabilities Act, Individuals with Disabilities Education Act, and Section 504 of the Rehabilitation Act. Mr. Edgington also has experience representing disabled, minor plaintiffs in suits against their caregivers and educational institutions. Mr. Edgington is also counsel in each of the civil rights or class actions identified by Mr. Timmons. He is counsel for the similar putative class case in the Western District of Tennessee, *G.S. et al. v. Gov. Bill Lee et al.*, Case No. 21-cv-2552-SHL-atc (Judge Lipman).

      (d)     Justin S. Gilbert of Gilbert Law, PLLC is a distinguished member of the Tennessee Bar, licensed to practice in the Middle District, Sixth Circuit, and United States Supreme Court. Mr. Gilbert's practice focuses primarily on civil rights in education, including the ADA and Section 504 and the Individuals with Disabilities Education Act (IDEA). He has represented students under Title II of the ADA and Section 504, school teachers under Title I and Section 504, and citizens seeking public accommodations under Title III of the ADA. He has represented

students with disabilities against both state and local governments, including the Tennessee Department of Education. He has handled class action cases brought under Title VII, the Fair Labor Standards Act, the Americans with Disabilities Act, and under state common laws in Tennessee. He is counsel in the similar putative class case involving Knox County Board of Education, Case No. 3:21-cv-00317 (Judge Greer).

(e)    Jessica F. Salonus of The Salonus Firm, PLC is a distinguished member of the Tennessee Bar, licensed to practice in all state and federal courts in Tennessee as well as the Sixth Circuit. Her practice almost exclusively focuses on civil rights in education, routinely handling cases under the ADA, Section 504, and the Individuals with Disabilities Education Act (IDEA) that involve both local school districts and the state of Tennessee. She has also represented teachers under Title I of the ADA and Section 504 and citizens seeking public accommodations under Title III of the ADA. She has previously and is currently counsel for class action cases brought under the Americans with Disabilities Act and Section 504. Along with Mr. Gilbert, she is counsel in the similar putative class case involving Knox County Board of Education, Case No. 3:21-cv-00317 (Judge Greer).

54.    Defendants have acted on grounds generally applicable to all proposed Class members. This action seeks declaratory and injunctive relief. Plaintiffs therefore seek Class certification under Rule 23(b)(2).

55.    In the alternative, the requirements of Rule 23(b)(1) are satisfied because prosecuting separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards for the party opposing the proposed Class.

## VI. CAUSES OF ACTION

**First Cause of Action:
Discrimination on the Basis of Disability in Violation of the ADA**

56.     Plaintiffs, on behalf of themselves and those similarly situated, repeat and re-allege each and every allegation above, as if set forth in full herein.

57.     "In the ADA, Congress provided [a] broad mandate" to "effectuate its sweeping purpose[ to] ... forbid[] discrimination against disabled individuals in major areas of public life, [including] ... public services ...." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001).  It is "'a milestone on the path to a more decent, tolerant, progressive society.'" *Id.* (quoting *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 375 (2001) (Kennedy, J., concurring)).

58.     Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

59.     The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

60.     The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

61.     Governor Lee's Executive Order is denying local school districts the ability to provide these similarly children in the instant matter with the protections they need to attend school safely.  Further, in failing to adopt a universal masking policy, the Williamson County Board of Education and the FSSD have placed the lives of medically vulnerable children who have

disabilities under the ADA in danger. In doing so, Defendants have violated the regulations and provisions of the ADA:

a. Defendants are failing to make a reasonable modification, and/or are preventing the school districts attended by the Class from making a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

b. Defendants are excluding, and/or are causing the school districts of Williamson County, Tennessee to exclude Plaintiffs from participation in public education in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

c. Defendants are failing to make, and/or causing Plaintiffs' school districts to fail to make, their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

d. Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

62. The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and/or (b) perpetuate the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. 28 C.F.R. §§ 35.130 (b)(3)(i) & (iii).

63.     Defendant Lee, in his official capacity as Governor of the State of Tennessee, WCBE, and the FSSD do not have the authority to circumvent the ADA and its protections for students with disabilities through executive order or guidance requirements.

64.     Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from the public school classrooms by a failure or refusal to provide a reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

**Second Cause of Action:**
**Violation of Section 504 of The Rehabilitation Act of 1973**
**Against All Defendants**

65.     Plaintiffs, on behalf of themselves and those similarly situated, do repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

66.     Plaintiffs and those similarly situated are children with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended. *See* 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

67.     Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the state of Tennessee.

68.     Defendant Lee, in his official capacity, the WCBE, and the FSSD are the recipients of federal financial assistance.

69.     Governor Lee's Executive Order is denying local school districts and public health authorities the ability to provide these similarly situated children with the accommodations they need to attend school safely.

70.     Defendants WCBE and FSSE are refusing to provide a universal masking policy as the accommodation medically vulnerable children with disabilities need to attend school safely.

71.     Defendants have violated the regulations and provisions of Section 504, and/or caused Plaintiffs' school districts to violate the regulations and provisions of Section 504, as follows:

a.     Defendants are excluding, and/or are causing Plaintiffs' school districts to exclude Plaintiffs from participation in public education in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

b.     Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability in violation of 34 C.F.R. § 104.4(b)(4);

c.     Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by Plaintiffs' school districts, in violation of 34 C.F.R. § 104.4(b)(4).

72.     Defendants do not have the authority to circumvent Section 504 and its protections for students with disabilities through executive order or guidance requirements.

73.     Excluding children with disabilities which make them more susceptible to serious illness or death from COVID-19 from public school classrooms by a failure or refusal to provide a reasonable modification (universal masking) for their disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

**VII. REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

74.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

75. Plaintiffs seek a temporary restraining order enjoining Defendant Governor Lee from enforcing Executive Order No. 84.

76. Plaintiffs seek a temporary restraining order requiring Defendants WCBE and FSSD to implement a universal masking policy without the general opt-out policy ordered by Governor Lee's Executive Order.

77. Plaintiffs seek a preliminary injunction enjoining Defendant Governor Lee during the course of this litigation from enforcing Executive Order No. 84.

78. Plaintiffs seek an injunction against Defendants WCBE and FSSD ordering a universal masking policy for all students and staff.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and those similarly situated respectfully request that this Court grant the following relief:

A. Assume jurisdiction of this action;

B. Certify this Petition as a class action;

C. Declare that Governor Lee's Executive Order No. 84 violates the rights of Plaintiffs and those similarly situated under the Americans with Disabilities Act and Section 504;

D. Declare that Defendants WCBE and FSSD's policies not requiring universal masking violate the rights of the Plaintiffs and those similarly situated under the Americans with Disabilities Act and Section 504;

E. Issue a temporary restraining order enjoining Governor Lee from violating the Americans with Disabilities Act and Section 504 by permitting parents in the schools of Williamson County from opting out of a universal mask mandate policy;

F.      Issue preliminary and permanent injunctive relief enjoining Governor Lee and the State of Tennessee from violating the Americans with Disabilities Act and Section 504 by permitting parents to opt-out of reasonable modifications required by the ADA and Section 504;

G.      Issue a temporary restraining order enjoining Defendants WCBE and FSSD from violating the Americans with Disabilities Act and Section 504 by not implementing a universal masking policy;

H.      Issue a preliminary and permanent injunctive relief enjoining Defendants WCBE and FSSD from violating the Americans with Disabilities Act and Section 504 by not implementing a universal masking policy;

I.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

J.      Grant such other and further relief as may be just, equitable and proper.

Respectfully Submitted,

**DONATI LAW, PLLC**

/s/Bryce W. Ashby
Bryce W. Ashby—TN Bar #26179
Brice M. Timmons—TN Bar #29582
Robert A. Donati—TN Bar #25355
Craig A. Edgington -—TN Bar #38205
1545 Union Avenue
Memphis, TN 38104
Phone: 901.278.1004
Fax: 901.278.311
Email:
bryce@donatilaw.com
robert@donatilaw.com
brice@donatilaw.com
craig@donatilaw.com

**GILBERT LAW, PLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
Facsimile: 423.756.2233
justin@schoolandworklaw.com

&

**THE SALONUS FIRM, PLC**
/s Jessica F. Salonus
JESSICA F. SALONUS (28158)
139 Stonebridge Boulevard
Jackson, Tennessee 38305
Telephone: (731) 300-0970
Facsimile: 731.256.5711
jsalonus@salonusfirm.com

***ATTORNEYS FOR PLAINTIFFS***