# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

In the Matter of R.K., by and through her mother and next
friend, J.K;

and W.S., by and through her mother and
next friend, M.S.,

on behalf of those similarly situated,

      Plaintiffs,

v.                                      Case No. 3:21-cv-00725

GOVERNOR BILL LEE, in his official
capacity as GOVERNOR OF TENNESSEE,
WILLIAMSON COUNTY BOARD OF EDUCATION,
and FRANKLIN SPECIAL SCHOOL DISTRICT,

      Defendants.

---

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
## FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

---

**COME THE PLAINTIFFS,** R.K., by and through her mother and next friend J.K., and W.S., by and through her mother and next friend, M.S., on behalf of those similarly situated and pursuant to Section 504 of the Rehabilitation Act, Title II of the Americans with Disabilities Act (ADA), and submit this brief in support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

1

# I.    INTRODUCTION

## DEFENDANTS ARE KNOWINGLY PITTING CHILDREN AGAINST CHILDREN, AND COMPROMISING THE LIFE AND HEALTH OF STUDENTS WITH DISABILITIES

This case involves students with certain disabilities[1] who, *by reason of* these disabilities, are more medically vulnerable to severe infection and/or death from COVID-19. For these students to enjoy safe passage into their existing school buildings, classrooms, and extracurricular activities, they require the reasonable modification of universal masking untethered to a purely voluntary parental opt-out.

For these Plaintiffs, and countless others like them, COVID and the Delta variant pose devastating consequences because "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[2] Similarly, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[3]

---

[1]    The disabilities include: (a) lung disease, including asthma, chronic obstructive pulmonary disease (*e.g.*, bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

[2]    Centers for Disease Control, *COVID-19: People with Certain Medical Conditions*, May 13, 2021, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 2, 2021).

[3]    *Id.*

As a result of Defendant Governor Bill Lee's executive order allowing parents to opt their children out of any school district mask mandate for any reason, and Defendants Williamson County Board of Education and Franklin Special School District's conforming opt out policies, the Defendants have jeopardized the health and safety of these children with disabilities. Pitting children with masks against children without masks, Defendants have nullified the rights of students with disabilities to enjoy safe, fundamental, and non-discriminatory access to their public institutions.

With the surge of the Delta variant, the necessity for such universal masking without a purely voluntary opt out is greater now than it has ever been. Despite infections of COVID-19 surging throughout the state of Tennessee and Williamson County and record numbers of pediatric cases of COVID-19, Defendants Governor Bill Lee, the Williamson County Board of Education, and the Franklin Special School District have failed to make or permit school districts to afford the reasonable accommodation of implementing a universal masking policy that does not contain a voluntary opt out.

Defendants' actions have led to heightened risk of infection and quarantine for these children. **As Defendant Governor Bill Lee admitted, "If you want to protect your kid from the [COVID-19] virus or from quarantine, the best way to do that is to have your kid in school with a mask."**[4] However, the protection from masking is not just for "your kid," but for *other kids too.*

Despite this knowledge, the Defendant Lee has withdrawn the protection from students with disabilities and placed them in significant danger. Defendants WCBE and FSSD have in-turn

---

[4]     https://apnews.com/article/health-coronavirus-pandemic-tennessee-32b7ff0dc540a2b11cc8c736c67020fe

followed suit with policies consistent with the Governor's Executive Order. Without intervention, Defendants will place more students with disabilities in real danger of severe infection and death as well as continue the spread of the virus to the community-at-large. Enjoining Defendant Lee's Executive Order and ordering Defendants WCBE and FSSD to institute a universal masking policy without purely voluntary parental opt-outs will cause no harm and will only benefit the public at-large.

For these reasons, and for the reasons explained further below, the Court should grant Plaintiffs' Motion.

## II. FACTS

### A. Plaintiffs and the Class Members Are at High Risk of Severe Illness or Death from COVID-19.

The CDC has provided a non-exhaustive list of factors that put people at high risk of severe illness or death from COVID-19.[5] While children in general are believed to be at less risk than adults from severe outcomes from COVID-19, children with these conditions and disorders are at significantly higher risk than their classmates who do not have the same disabilities.[6] Plaintiffs and the Class and Subclass they seek to represent are K-12 students in public schools in Williamson County who are at high risk of severe illness or death if they contract COVID-19 due to their disabilities.

---

[5]  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#ChildrenAndTeens ("Current evidence suggests that children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19. Similar to adults, children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19.")

[6]  Id.

**Plaintiff R.K.** is a thirteen-year-old girl who has Down syndrome. (Declaration of J.K., "J.K. Decl." ¶ 2). R.K. is in seventh grade in Williamson County Schools. (Id. ¶¶ 2, 6). R.K. is at heightened risk of severe complications from COVID-19 due to her disability. Specifically, individuals with Down syndrome who are infected with COVID-19 are four times more likely to be hospitalized and ten times more likely to die as a result of the infection as compared with the general population. For perspective, their risk of death from COVID-19 is twice that of a person with stage 5 chronic kidney disease on dialysis. (Id. ¶¶ 3, 4, 7). R.K. has been vaccinated but it is not clear the level of protection that the vaccine provides her given her Down syndrome. R.K. has a history of needing a pneumonia vaccine booster due to her Down syndrome causing decreased efficacy. (Id. ¶¶ 5).

**Plaintiff W.S.** Plaintiff W.S. is a seven-year-old second grader in the Franklin Special School District. (Declaration of M.S., "M.S. Decl." ¶ 2, 5). W.S. has type-1 diabetes, which places her at elevated risk of severe complications from COVID-19 infection. (Id. ¶ 2, 3). W.S. or her sister appear to have been exposed to COVID-19 at school due to being around students who were unmasked as the FSSD does not have a universal masking requirement. (Id. ¶ 7-8). As a result of the infection, W.S. had difficulty controlling her blood sugar. (Id. ¶ 9). She developed ketones and we were on the verge of taking her to the emergency room because we were unable to get her blood sugar under control. (Id. ¶ 9). The presence of ketones can quickly escalate to a life-threatening condition called diabetic ketoacidosis (DKA). (Id. ¶ 9).

### B. School-aged Children with Disabilities Face an Imminent Risk of Substantial Bodily Harm

The danger of COVID-19 to Plaintiffs and other Class members who have disabilities is increasingly acute in schools. Children are now 36% of all COVID-19 cases in Tennessee.[7] Since

---

[7] https://apnews.com/article/health-coronavirus-pandemic-tennessee-32b7ff0dc540a2b11cc8c736c67020fe

June/early July 2021, the State of Tennessee has seen a dramatic increase in the number of COVID-19 cases, mostly driven by the rapid spread of the Delta variant. For example, on July 14, 2021, Tennessee had an average positive test rate for COVID-19 of 6.3%. As of September 11, 2021, that average positive test rate had grown to 19.60%.[8] In that same time period, the average daily cases per 100,000 people in Tennessee has grown from 7 to 103.[9]

During this change, the rate of infection among children has increased significantly. For the week of August 22, 2021, cases among children aged between 0-18 years compromised 37.6% of all new COVID-19 infections in Tennessee. For the week that followed, 31.4% of all new COVID-19 infections in Tennessee were pediatric cases.[10]

From June/early-July 2021, Williamson County saw a massive spike in COVID-19 infections. On July 14, 2021, Williamson County had a seven-day average of 19 new COVID-19 cases. That number increased to 332 new infections by September 6, 2021. This rise in cases and specifically pediatric cases has wreaked havoc on public schools in Williamson County. By mid-August 2021, Williamson County Schools' middle schools had over 33% student and 30% staffing absences.[11] By August 24, 2021, both WCS and FSSD reported that they had schools close to the "crisis point" of having insufficient staffing to keep the schools open due to the number of staff out due to infections with COVID-19.[12] WCS and FSSD pleaded with Tennessee state leadership

---

[8] https://www.mayoclinic.org/coronavirus-covid-19/map/tennessee

[9] Id.

[10] https://www.tn.gov/content/dam/tn/health/documents/cedep/novel-coronavirus/datasets/Data-on-Cases-among-all-Children-0-18.pdf

[11] Ex. A: August 24, 2021 Letter to Senator Johnson, Representatives Casada, Ogles and Whitson from WCS and FSSD Superintendents.

[12] Id.

to allow their districts to have the option of remote learning because the conditions had become so dire.[13]

COVID-19 is most commonly transmitted by small viral particles (droplets) exhaled by an infected person that are deposited into the nose, mouth and/or eyes of an uninfected person. (Declaration of Sara Cross, MD, "Dr. Cross Decl." ¶ 11; Declaration of Sara Elizabeth Williams, MD, MPH, "Dr. Williams Decl." ¶ 8). This means COVID-19 spreads to an uninfected person when an infected person – including asymptomatic (no symptoms) – speaks, coughs, or sneezes. People with COVID-19 have reported a wide range of symptoms, ranging from no or mild symptoms to severe illness. COVID-19 may cause severe and long-term health complications, including death. (Dr. Cross Decl. ¶ 19; Dr. Williams Decl. ¶ 13-14). Underlying medical conditions are associated with severe COVID-19 illness in children, specifically obesity, type I Diabetes millitus, prematurity and cardiac and congenital abnormalities. (Dr. Cross Decl. ¶ 18; Dr. Williams Decl. ¶ 14-15).

COVID-19 can spread quickly. In-person gatherings pose a heightened risk of transmission of COVID-19 as the spread of COVID-19 is more likely when people are in close contact or proximity with one another (within about six feet). (Dr. Williams Decl. ¶ 9). The risk of transmission also increases when individuals gather in close proximity for extended periods, and when they do so in enclosed (indoor) spaces. (Dr. Williams Decl. ¶ 9).

The consensus by the Centers for Disease Control and Prevention (CDC), the World Health Organization (WHO) and other infectious disease experts is that the only way to limit illness and death from COVID-19 until a larger proportion of the population has been vaccinated is through a combination of measures, including: individual behaviors such as wearing masks, maintaining

---

[13] Id.

physical distance from others, washing hands and completely avoiding contact with others when ill; widespread testing with isolation of cases and quarantine of close contacts; and community social distancing measures. (Dr. Williams Decl. ¶ 10; Dr. Cross Decl. ¶ 13). Masks are effective in mitigating the spread of COVID-19. (Dr. Cross Decl. ¶¶ 12-17; Dr. Williams Decl. ¶¶ 20-25). Scientific research has produced experimental, epidemiological, and modeling evidence demonstrating the efficacy of masks in mitigating transmission of COVID. (Dr. Cross Decl. ¶¶ 12-17; Dr. Williams Decl. ¶¶ 25-27). The use of masks is associated with a large reduction in risk of infection (17% risk of infection in unmasked individuals versus 3% risk of infection in masked individuals). (Dr. Cross Decl. ¶ 15; Dr. Williams Decl. ¶ 25). Universal masking has been shown to reduce transmission of COVID-19 by 79% when individuals are in close contact indoors with an infected individual. (Dr. Cross Decl. ¶ 16; Dr. Williams Decl. ¶ 26). While all potential efforts should be taken to mitigate the risk to school children, universal masking appears to be the most efficacious with minimal cost when compared to other measures. (Dr. Cross Decl. ¶ 13).

Those steps specifically include wearing masks as requiring individuals to wear a mask over their nose or mouth in school limits the spread of the virus by the wearer and also provides protection for the wearer. (Dr. Cross Decl. ¶¶ 12-13; Dr. Williams Decl. ¶ 23-24). Requiring all students to be masked is especially important when individuals with disabilities are unable to wear masks due to their disabilities. In other words, they rely on their classmates and teachers to protect them by wearing their own masks. (Dr. Williams Decl. ¶ 24). Thus, to maximize the ability of children with and without disabilities to safely attend their in-person public institutions, it is important that all students and staff wear masks and not be able to opt-out for purely voluntary reasons. (Dr. Cross Decl. ¶¶ 10, 20; Dr. Williams Decl. ¶¶ 28-29).

### III.    ARGUMENT

Plaintiffs meet the legal requirements for the Court to grant them a temporary restraining order and preliminary injunction.  In fact, in Shelby County, District Judge Lipman entered both a temporary restraining order followed by (today), a preliminary injunction, relating to Governor Lee's Executive Order. *G.S. v. Lee*, No. 21-cv-02552-SHL-atc, 2021 U.S. Dist. LEXIS 168479, at *16 (W.D. Tenn. Sep. 3, 2021); see also, **Exhibit A hereto, D.E. 62, Order Granting Preliminary Injunction**.

Writing "COVID-19 continues to ravage the health of children and adults alike across the State of Tennessee," (Ex. A, at p. 4), Judge Lipman found that the same class of persons with disabilities was likely to succeed in their claims of being denied fundamental access, that universal masking without a voluntary opt out was reasonable and necessary, and the Governor's Executive Order stood in violation of Title II of the ADA and Section 504 and was enjoined for the students of Shelby County.

As explained below, the Plaintiffs in Williamson County, like Shelby, are (1) likely to succeed on the merits of their claims; (2) they are likely to suffer irreparable harm in the absence of relief; (3) the issuance of the injunction would not cause harm to others; and (4) a TRO/injunction is in the public interest.  Williamson v. Recovery Ltd. P'ship, 731 F.3d 608, 627 (6th Cir. 2013) (quoting Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati, 363 F.3d 427, 432 (6th Cir. 2004)).  Where plaintiffs demonstrate "irreparable harm which decidedly outweighs any potential harm to the defendant," the "degree of likelihood of success required" is less, and a plaintiff need only raise "serious questions going to the merits."  In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985).

**A.**    **Plaintiffs Are Likely to Succeed on the Merits of Their Claims.**

Plaintiffs are likely to establish that Defendants have violated their rights under the ADA and Section 504 of the Rehabilitation Act.   Section 504 of the Rehabilitation Act is an antidiscrimination statute that provides: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Like Section 504, Title II of the Americans with Disability Act ("ADA") is also an antidiscrimination statute and provides:

> No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Excluding children from the public-school classrooms on the basis of their disability is precisely the type of discrimination and segregation the ADA and its amendments aim to prevent and specifically prohibit.  Rehabilitation Act and ADA claims "share the same standard" and Rehabilitation Act claims are reviewed as though brought under the ADA.   Zibbell v. Mich. Dep't of Human Servs., 313 F. App'x 843, 849 (6th Cir. 2009). Both the ADA and the Rehabilitation Act require Plaintiffs to establish that: (1) Plaintiffs are qualified individuals with a disability within the meaning of Section 504 of the Rehabilitation Act or the ADA; (2) Plaintiffs will be "excluded from participation in" or "denied benefits of" such "services, programs, or activities of the public entity," and (3) Plaintiffs' exclusion, denial of benefits, or discrimination occurred "by reason of" their disability.  Keller v. Chippewa Cty., 2021 U.S. App. LEXIS 17839, at *10 (6th Cir. June 14, 2021).

In this matter, Plaintiffs will likely prevail on the merits because they are qualified individuals with disabilities under the ADA and Section 504, the Defendants' mask opt-out

order/policies have the effect of excluding these children from their public institution, or otherwise denying them the opportunity to participate in the services of the school district.

Defendant Governor Lee's Executive Order and the Defendants WCSB's and FSSD's policies specifically violate the regulations and provisions of the ADA and Section 504, and/or cause Plaintiffs' school districts to violate the regulations and provisions of the ADA and Section 504 in the following ways:

1. Defendants are failing to make a reasonable modification, and/or are preventing Plaintiffs' school districts from making a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

2. Defendants are excluding and/or are causing Plaintiffs' school districts to exclude Plaintiffs from participation in public education, in violation of 42 U.S.C. § 12132; 28 C.F.R. § 35.130; 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

3. Defendants are failing to make and/or causing Plaintiffs' school districts to fail to make, their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

4. Defendants are administering policies that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3)) and 34 C.F.R. § 104.4(b)(4).

5. Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. § 104.4(b)(4);

Although all school children, particularly those under age 12 who are ineligible to receive the vaccine, face an increased risk of contracting COVID-19 in the absence of a mask mandate, students with certain medical disabilities will be significantly more impacted without this basic protection. Plaintiffs and the Class and Subclass they represent have medical disabilities that have been shown to put them at greater risk for being hospitalized, becoming severely ill, or dying as a

result of COVID-19. If they contract COVID-19, each of these Plaintiffs are at a high risk of significant complications such as severe illness, long-lasting disability, and death.

**B.**    **Plaintiffs' Risk of Exposure to COVID-19 and/or Withdrawal from In-Person Classes Constitutes Irreparable Harm.**

Plaintiffs are likely to suffer irreparable and substantial harm if Governor Lee's Executive Order No. 84 remains in place. Plaintiffs must show that "irreparable injury is likely in the absence of an injunction." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). A harm need not be inevitable or have already happened for it to be irreparable; rather, imminent harm is also cognizable harm that merits an injunction. See Helling v. McKinney, 509 U.S. 25, 33 (1993). Plaintiffs are likely to suffer probable, irreparable injury if the Governor's Executive Order remains in place because massive numbers of children in the student body have already opted-out of the mask requirement policies, and the number of students infected with COVID-19 or exposed, warranting quarantine continues to rise. While a number of other accommodations to limit the spread of COVID-19 are helpful, universal masking is essential in mitigating the spread based on the manner in which COVID-19 is spread and the efficacy of universal masking as compared with other techniques. In fact, Plaintiff W.S. has already tested positive after she or her sister were exposed to unmasked classmates. W.S. and her mother, of course, face every day the decision of whether to return in person for schooling or risk recontracting COVID-19 when exposed to her unmasked classmates.

Without the ability to implement a universal mask mandate, Plaintiffs will continue to be exposed to an increased risk of infection, hospitalization, or death because of COVID-19 by simply seeking access to the building, classroom, hallways, and extracurriculars.

Plaintiffs are particularly vulnerable to the virus both because of their medical conditions, the fact that the Subclass remains ineligible to receive the vaccine due to being under the age of

12 years old, or that the efficacy of the vaccine is reduced due to their compromised immune systems. Frankly, it would be unconscionable to argue that exposure to virus that cause severe ramifications including death is not an irreparable harm incapable of being adequately remedied at law with money damages. Peregrino Guevara v. Witte, No. 6:20-CV-01200, 2020 WL 6940814, at *8 (W.D. La. Nov. 17, 2020) (noting that "[i]t is difficult to dispute that an elevated risk of contracting COVID-19 poses a threat of irreparable harm"); Banks v. Booth, 2020 U.S. Dist. LEXIS 68287, at *45 (D.D.C. Apr. 19, 2020) (in granting an injunction the court found "that the number of inmates testing positive for COVID-19 is growing daily.

Given the gravity of Plaintiffs' asserted injury, as well as the permanence of death, the Court finds that Plaintiffs have satisfied the requirement of facing irreparable harm unless injunctive relief is granted."); Thakker v. Doll, 451 F. Supp. 3d 358, 365 (M.D. Pa. 2020) (in granting an injunction to release petitioners in civil detention who suffered from "chronic medical conditions and face[d] an imminent risk of death or serious injury if exposed to COVID-19," court determined that "[t]here [could] be no injury more irreparable" than the "very real risk of serious, lasting illness or death"); Basank v. Decker, No. 20 CIV. 2518 (AT), 2020 WL 1953847, at *7 (S.D.N.Y. Apr. 23, 2020) (in granting an injunction to prevent placing petitioners in immigration detention, court noted that "[p]etitioners [were] at particular risk for serious illness or death, because their preexisting medical conditions either [made] them more vulnerable to contracting COVID-19, or more likely to develop serious complications due to COVID-19, or both" and the possibility of a severe, and "quite possibly fatal" infection constituted irreparable harm that warranted a preliminary injunction). Accordingly, the Court should find that Plaintiffs have met their standard and demonstrated the substantial likelihood of irreparable harm.

**C.**     **There is No Hardship to Defendants and the Public Interest Favors Plaintiffs.**

When the government opposes the issuance of a temporary restraining order, the final two factors—the balance of the equities and the public interest—merge.  See Nken v. Holder, 556 U.S. 418, 435 (2009).  The public has an interest in protecting public health.  See Neinast v. Bd. of Trs. of the Columbus Metro. Library, 346 F.3d 585, 594 (6th Cir. 2003) (recognizing public health and safety as legitimate government interests).  The public interest is also "served by the enforcement of the ADA."  Wilborn ex rel. Wilborn v. Martin, 965 F. Supp. 2d 834, 848 (M.D. Tenn. 2013).  The public interest thus requires that a TRO be granted in order to effectuate the ADA's broad "remedial purposes."  Hostettler v. College of Wooster, 895 F.3d 844, 853 (6th Cir. 2018).

Moreover, no harm or hardship shall be suffered by Defendants.  As Gov. Lee himself has affirmed that masking is the single best way to protect children at school from infection with COVID-19.  The Tennessee Attorney General has opined that "the State's interest in protecting the safety of the public would indeed be less effectively achieved without a mandate that requires the wearing of a face covering in public during the COVID-19 pandemic."[14]  Enjoining Governor Lee's Executive Order and ordering Defendants WCBE and FSSD will cause no harm other than the potential dissatisfaction of some members of the public.  Further, ordering a universal mask mandate will benefit the public by reducing the risk of the spread of COVID-19 in schools and among its children.  It also has the benefits of reducing the stress faced by local hospitals in treating unnecessarily infected children.

---

[14] https://www.tn.gov/content/dam/tn/attorneygeneral/documents/ops/2020/op20-14.pdf

### III. CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion. Plaintiffs ask for a hearing on this request for TRO based on the written brief and attached declarations on Monday, August 30, 2021.

Plaintiffs have provided notice of this motion and the relief sought by hand delivery and email as well as telephone call to the Tennessee Attorney General's Office and the Shelby County Attorney's Office.

Respectfully Submitted,

**DONATI LAW, PLLC**

/s/Bryce W. Ashby
Bryce W. Ashby—TN Bar #26179
Brice M. Timmons—TN Bar #29582
Robert A. Donati—TN Bar #25355
Craig A. Edgington -—TN Bar #38205
1545 Union Avenue
Memphis, TN 38104
Phone: 901.278.1004
Fax: 901.278.311
Email:
bryce@donatilaw.com
robert@donatilaw.com
brice@donatilaw.com
craig@donatilaw.com


**GILBERT LAW, PLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
Facsimile: 423.756.2233
justin@schoolandworklaw.com

&

15

**THE SALONUS FIRM, PLC**
/s Jessica F. Salonus_____
JESSICA F. SALONUS (28158)
139 Stonebridge Boulevard
Jackson, Tennessee 38305
Telephone: (731) 300-0970
Facsimile: 731.256.5711
jsalonus@salonusfirm.com

***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

A copy of the foregoing was served on Counsel for Defendants along with a copy of the Complaint and Summons as well as by email to provide proper notice pursuant to Rule 65 on this the 17th day of September, 2021.

/s/Bryce W. Ashby_____