# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **R.K. et al.,** | | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GOVERNOR BILL LEE, in his official** | ) | **No. 3:21-cv-00725** |
| **capacity as GOVERNOR OF TENNESSEE, et al.,** | ) | |
| | ) | **Chief Judge Crenshaw** |
| | ) | **Magistrate Judge Newbern** |
| **Defendants.** | ) | |

## RESPONSE OF THE GOVERNOR
## TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION[1]

**TO THE HONORABLE WAVERLY D. CRENSHAW, JR., CHIEF JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE:**

Plaintiffs, the parents of two children who have been attending school in Williamson County for over a month, now ask the Court for emergency relief in the form of a temporary restraining order. However, Plaintiffs cannot show that they are entitled to emergency relief because they have not demonstrated (or even alleged) that a universal mask mandate is the only way of keeping their children safe from COVID-19. Instead, Dr. Sara Cross indicates "there are a number of methods that can assist in mitigating the spread of COVID-19." ECF 4-5, Declaration of Sara Cross, MD (Cross Dec.) at ¶ 13. Similarly, the U.S. Department of Education has endorsed virtual education as a method of providing an education while reducing the transmission of COVID-19 among students. *See* United States Department of Education, *Addressing the Risk of*

---

[1] The State Defendants have not yet been properly served. This appearance is limited in nature and does not waive proper service.

*COVID-19 in Preschool, Elementary and secondary Schools While Serving Children with Disabilities*, https://bit.ly/3hx1iRJ (Mar. 21, 2020) ("To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), []Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction").

Notably, Plaintiffs admit they are not being denied educational access, but rather have been attending school in-person with other children since the school year began. These allegations are not the sort that support the emergency relief of a temporary restraining order or, at a later hearing, the drastic and extraordinary remedy of a preliminary injunction. For these reasons, and other reasons that follow, Governor Lee asks that the Court deny Plaintiffs' request for a temporary restraining order and, after a fair opportunity to respond, deny Plaintiffs' request for a preliminary injunction.

## I. The September 20, 2021 hearing should be limited to consideration of a temporary restraining order.

On the afternoon of Saturday, September 19, counsel for Plaintiffs forwarded two email messages to the Office of the Tennessee Attorney General and several attorneys employed by the Attorney General. Ms. Salonus attached a number of documents, including the Complaint (Doc. No. 1), a motion "for Temporary Restraining Order and Preliminary Injunction" and a supporting memorandum (Docs. No. 4 and 4-1), all filed on Friday, September 18. Ms. Salonus also attached to her Saturday emails an Order entered by the Court on Saturday, September 19 (Doc. No. 7). The Order noted that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction were before the Court. It ruled that the Court "will hold a hearing on Plaintiffs' motion on Monday, September 20, 2021, at 1:30 P.M." (emphasis omitted).

2

The Governor objects to the September 20 setting of Plaintiffs' motion for a preliminary injunction. The record shows that Plaintiffs filed their complaint together with a combined motion for temporary restraining order on Friday, September 17. The Court granted a hearing on the combined motion by order entered on Saturday, September 18. The Governor's counsel from the Office of the Tennessee Attorney General was not made aware of those documents until Sunday, September 19.

Distinct procedural rules apply to applications for temporary restraining orders and preliminary injunctions. A temporary restraining order may be issued without notice to the adverse party. *See, e.g., Memphis Center for Reproductive Health v. Slatery,* No. 3:20-cv-00501, 2020 WL 3957792, at *4 (M.D. Tenn. July 13, 2020) (Campbell, J.) citing Fed. R. Civ. P. 65(b)(1).[2] The Sixth Circuit instructs district courts to apply additional procedural safeguards for preliminary injunction hearings. *Hunter v. Hamilton Cnty. Bd. of Elections,* 635 F.3d 219, 246 (6th Cir. 2011). As noted in *Hunter,* while Rule 65(a)(1) does not expressly require a hearing, Supreme Court precedent establishes that "[t]he notice required by Rule 65(a)…implies a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Id.,* quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.,* 415 U.S. 423, 432 n. 7 (1974) (deeming "same-day notice" insufficient). The Sixth Circuit has clarified that, although a hearing is not required "when the issues are primarily questions of law," Rule 65(a)(1) does require a hearing "when there are disputed factual issues" material to the preliminary injunction. *Hunter,* 635 F.3d at 246 (citing *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,* 511 F.3d 535, 552 (6th Cir. 2007)).

---

[2] Noting that the purpose of a TRO is to "preserve the *status quo* and to prevent irreparable harm until an opportunity for a full review of the facts and legal arguments at a preliminary injunction hearing." *Id.*

3

The Governor has been given inadequate notice of Plaintiffs' application for a preliminary injunction. The Governor anticipates that the testimony of fact witnesses will contest the preliminary injunctive relief that Plaintiffs request. He also intends to place at issue the legal basis for Plaintiffs' application for preliminary injunctive relief. Significantly, "courts have not hesitated to dissolve a preliminary injunction issued without sufficient notice or opportunity to contest issues of fact or of law." *Hunter,* 635 F.3d at 246 (quoting *Amelkin v. McClure,* 74 F.3d 1240, at *5 (6th Cir. 1996) (unpublished)). These requirements are not mere procedural formalities. Rather, they are grounded in the fundamental values of our judicial system. *Amelkin,* slip op. at *5. The Governor objects to the hearing of Plaintiffs' application for preliminary injunctive relief on September 20, 2021 on the basis of insufficient notice.

To the extent that the Court intends the hearing set for September 20, 2021, to encompass a preliminary injunction as well as a temporary restraining order, the Governor objects that he has received insufficient notice for such hearing under Fed. R. Civ. P. 65(a). Under Supreme Court precedent, the Governor should be granted notice and a "fair opportunity to oppose the application and to prepare for such opposition." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Trick Drivers Local No. 70*, 415 U.S. 423, 433 (1974). Same day notice is insufficient, and generally at least five days' notice is contemplated. *See id*. Here, the hearing was scheduled on Saturday, and counsel did not have any notice of the hearing until Sunday morning. The Governor will be unduly prejudiced if the Court were to enter the "drastic and extraordinary remedy" of a preliminary injunction before he has had adequate time to review the pleadings, potentially depose witnesses, and identify and proffer witnesses in his defense.

Not only has the Governor received inadequate notice for a preliminary injunction, process has not been served on the Governor in this matter. Preliminary injunctions cannot issue before

4

proper service of the suit has been made. *See Doe v. Tennessee*, No. X, 2018 WL 5313087, at * 4

("'[E]ven if one or all of the Defendants received notice of the motion for injunctive relief, since

service of process has not been accomplished, a preliminary injunction cannot be issued.'"

(quoting *Koetje v. Norton*, No. 13-CV-12739, 2013 WL 8475802, at *2 (E.D. Mich. Oct. 23,

2013)); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110 ("It is

elementary that one is not bound by a judgment *in personam* resulting from litigation in which he

is not designated as a party or to which he has not been made a party by service of process.").

Because a preliminary injunction cannot issue due to the lack of notice or service to the

Governor, the Governor objects to any consideration of a preliminary injunction during the

September 20 hearing and requests that all considered relief be limited to a temporary restraining

order.

## II.    Plaintiffs' Sought-After Preliminary Injunctive Relief is Barred by Laches.

Plaintiffs' request for a temporary injunction is barred by laches. "[L]aches, the Sixth Circuit

has explained, "is a negligent and unintentional failure to protect one's rights." *See United States v.

City of Loveland*, 621 F.3d 465, 473 (6th Cir. 2010) (quoting *Elvis Presley Enters., Inc. v. Elvisly

Yours, Inc.*, 936 F.2d 889, 894 (6th Cir.1991)). A defendant asserting laches, then, must show that: (1)

the plaintiff delayed unreasonably in asserting its rights, and (2) the defendant is prejudiced by this

delay. *See id.* (quoting *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320

(6th Cir. 2001)). Both elements are met here.

*First*, Plaintiffs unreasonably delayed in seeking a temporary restraining order. Executive

Order 84 was signed and became effective on August 16, 2021—more than a month before Plaintiffs

filed their complaint.  Plaintiffs allege that the Executive Order would subject them to dire harm such

that it would not be safe for them to attend school.  But they have been attending school for a month

with the Executive Order in place.  In other words, Plaintiffs waited nearly a month after the Executive

Order was signed and went into effect to bring their suit and to move for this emergency relief, leaving not even a full business day to resolve their motion. Given the harm they allege, either they unreasonably delayed in seeking judicial intervention or their imagined harms simply have been overblown—or both.

*Second*, Plaintiffs' delay will prejudice Defendants. "Prejudice," some courts have recognized, "can be inferred simply from the plaintiff's delay, or from evidence of specific harm." *Perry v. Judd*, 840 F. Supp. 2d 945, 954 (E.D. Va.), *aff'd*, 471 F. App'x 219 (4th Cir. 2012) (citing *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990)); *see also Memphis A. Phillip Randolph Inst. v. Hargett*, 473 F. Supp. 3d 789, 800 (M.D. Tenn. 2020) (recognizing that "at this late stage, a certain amount of prejudice can be presumed"). And "[t]he greater the delay, the less prejudice required to show laches." *Perry*, 840 F. Supp. 2d at 954. Given Plaintiffs' inexcusable delay here, then, Defendants need not show much prejudice. *See id.* But that is not to say that Defendants cannot show prejudice. To the contrary, Plaintiffs' eleventh-hour temporary injunction is all but certain to prejudice Defendants.

For one thing, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted); *see also Abbott v. Perez*, 138 S. Ct. 2305, 2324 (recognizing that enjoining a State from enforcing its laws would "seriously and irreparably harm the State"). Here, the Governor utilized his constitutional and statutory authority to issue the challenged Executive Order. It follows that the State would suffer "irreparable injury" if this Court were to issue Plaintiffs' requested temporary restraining order. *See Maryland*, 567 U.S. at 1303.

And this injury is compounded by the timing of Plaintiffs' request. Again, Plaintiffs waited until Friday, September 17, 2021, to request a temporary restraining order despite being in attendance for nearly a month. *See* Compl., DE 1. And Defendants did not received notice as such until Sunday, September 19, 2021. Now Plaintiffs claim that the harm they allege requires immediate relief, and the hearing schedule does not even allow for a full business day for consideration and briefing. That

6

timeframe is far too short for the "nuanced policy decisions" that their requested relief requires. *Crookston v. Johnson*, 841 F.3d 396, 399 (6th Cir. 2016). Indeed, those are precisely the sort of decisions that "no one should be making at the eleventh hour." *See id.*; *see also id.* at 398 (recognizing, in the election context, that "[w]hen an election is imminent and when there is inadequate time to resolve factual disputes and legal disputes, courts will generally decline to grant an injunction to alter a State's established election procedures" (cleaned up)).

In sum, both elements of laches are present here. And for that reason, this Court should exercise its discretion to conclude that laches bars Plaintiffs' eleventh-hour request for a temporary restraining order. *See Memphis A. Phillip Randolph Inst.*, 473 F. Supp. 3d at 800.

## III. Plaintiffs cannot show they are entitled to emergency relief because they have not shown they cannot be safely educated without a universal mask mandate.

By its nature, "a Temporary Restraining Order ("TRO") is an emergency measure." *Hartman v. Acton*, No. 2:20-cv-1952, -- F. Supp. 3d --, 2020 WL 1932896 (S.D. Ohio Apr. 21, 2020). Federal Rule of Civil Procedure 65(b) requires a court to examine whether a plaintiff has shown facts that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant." *Id.* (quoting Fed. R. Civ. P. 65(b)(1)(A)).

Here, the Declarations fall far short of demonstrating any form of emergency because they do not show that Plaintiffs lack alternatives to attend school safely. *Cf. Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 309 (1989) ("To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek."). Here, Plaintiffs indicate they have a preferred method of attending school, in-person with a mask mandate. However, although Plaintiffs are entitled to an education, they are not entitled to choose every aspect of that education. *See Gaines v. Runyon*, 107 F.3d 1171, 1178 (6th Cir. 1997) ("The Rehabilitation Act does not impose a duty to provide every accommodation requested.").

7

### A. Plaintiffs can safely attend virtual school to mitigate against the risk of COVID.

One alternative available to Plaintiffs is virtual or "remote" education. Williamson County schools offer virtual education to all students. *See* The Tennessean, *Williamson County Schools to Offer Two Online Schools, Requests that TSSAA allow athletic participation*, https://bit.ly/3hNEayo (Apr. 20, 2021). Students can opt into virtual schools or can receive virtual education when recommended by their physician or Individualized Education Program ("IEP") team. *See* Tenn. Comp. R. & Regs. § 0520-01-09-.07 (allowing homebound placement on recommendation of an IEP team); *id.* at § 0520-01-02-.10 (allowing homebound placement on recommendation of physician); *id.* at 0520-01-03-.05 (allowing for virtual education for homebound students). Virtual education allows students to learn from home and therefore avoid contact with unmasked students. The U.S. Department of Education has recommended virtual education as a way of providing education to students who are at risk of contracting COVID-19. As the Department of Education has advised schools and parents nationwide:

> At the outset, OCR and OSERS must address a serious misunderstanding that has recently circulated within the educational community. As school districts nationwide take necessary steps to protect the health and safety of their students, many are moving to virtual or online education (distance instruction). Some educators, however, have been reluctant to provide any distance instruction because they believe that federal disability law presents insurmountable barriers to remote education. This is simply not true. We remind schools they should not opt to close or decline to provide distance instruction, at the expense of students, to address matters pertaining to services for students with disabilities. Rather, school systems must make local decisions that take into consideration the health, safety, and well-being of all their students and staff.
>
> **To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), † Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.**

8

U.S. Department of Education, *Addressing the Risk of COVID-19 in Preschool, Elementary and secondary Schools While Serving Children with Disabilities*, https://bit.ly/3hx1iRJ (Mar. 21, 2020) (emphasis in original).

In short, the U.S. Department of Education recognizes virtual or remote learning as a method for educating students with disabilities while avoiding the dangers of contracting COVID-19. Rather than taking advantage of this method of education, Plaintiffs ask the Court to invoke its emergency powers to alter how thousands of students in Williamson County Schools are educated.

## B. Plaintiffs have been attending school in-person for over a month, belying their need for emergency relief.

Furthermore, Plaintiffs' actions speak to the lack of an emergency requiring a temporary restraining order. Plaintiffs have been attending school in person for over a month. *See* InFocus: Williamson County Schools eNewsletter, *School Board Approves 2021-22 School Calendar*, https://www.wcs.edu/Page/6069 (Nov. 17, 2020) (indicating the first day of school in Williamson County was August 6, 2021). J.K, a licensed and board-certified immunologist, is currently sending her daughter R.K. to school on a daily basis. ECF 4-3, Declaration of J.K. (J.K. Dec.) at ¶¶ 2, 6, 12. Likewise, W.S. is attending school and has done so from the start of the school year. ECF 4-4, Declaration of M.S. (M.S. Dec.) at ¶¶ 5-7 (stating that W.S. attends second grade and has "from the start of school"). Whatever the risk of sending children to school in-person, Plaintiffs actions show that it is currently an *acceptable* risk, one that does not merit *emergency* relief, especially given the availability of virtual schools to further mitigate any risk of contracting COVID-19 at school.

9

**IV.    Plaintiffs cannot succeed on the merits because they cannot show any violation of the ADA or Section 504.**

A close review of Plaintiffs' complaint reveals that Plaintiffs don't plead any violation of law. The Sixth circuit recognizes two types of claim under Title II of the Americans with Disabilities Act ("ADA"): intentional discrimination and failure to accommodate. *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017).

**A.    Plaintiffs have not alleged and cannot show Executive Order 84 was motivated by animus.**

To make a case for intentional discrimination, the Plaintiffs "must show that: (1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (citing *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008). To show that a denial was "because of [plaintiff's] disability," the plaintiff must "'present evidence that animus against the protected group was a significant factor in the position taken by [the decisionmakers].'" *Id*. (quoting *Turner v. City of Englewood*, 195 F. App'x 346, 353 (6th Cir. 2006)). Plaintiffs cannot show, and do not even allege, that Executive Order 84 ("EO 84") was motivated by animus toward Plaintiffs.

For the same reason, Plaintiffs cannot succeed under Section 504 of the Rehabilitation Act ("Section 504"). The Sixth Circuit has expressly held that disparate impact claims are not cognizable under Section 504. *Doe v. BlueCross BlueShield of Tenn., Inc.*, 926 F.3d 235, 241 (6th Cir. 2019). Without any showing of animus, any argument that EO 84 disproportionately affects the disabled is simply a disparate impact claim. *See Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (explaining that disparate impact occurs when "practices that are not intended to discriminate . . . in fact have a disproportionately adverse effect" on a protected group).

10

**B. Plaintiffs cannot show they have been denied reasonable accommodations.**

Plaintiffs likely will argue that they have asserted reasonable accommodation claims, not disparate-impact claims. But Plaintiffs cannot succeed on this theory either because the ADA and Section 504 require that accommodations be made on an individualized basis. Indeed, the Rehabilitation Act contemplates that teams (called "504 Teams") will help students reach individualized accommodations to their education. *See* 34 C.F.R. § 104.35; 34 C.F.R. § 104.35(c)(3). Plaintiffs identify only one modification that is acceptable to them—universal masking in Williamson County Schools—and that is the modification they request. ECF 1, Complaint, at ¶¶ 64, 73.

To be reasonable, the modification must not impose undue financial or administrative burdens upon the public entity or require a fundamental alteration in the nature of the program. *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d at 453, 461 (6th Cir. 1997) (en banc); *Sandison v. Mich. High Sch. Athletic Ass'n*, 64 F.3d 1026, 1034 (6th Cir. 1995); see 28 C.F.R. §35.130(b)(7)(i) (requiring public entities to make reasonable modifications in policies, practices, or procedures when necessary to avoid disability discrimination, "unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."). Moreover, a reasonable modification is one "that is necessary to avoid discrimination on the basis of disability." *Muhammad v. Ct. of Common Pleas of Allegheny Cnty.*, 483 F. App'x 759, 763 (3d Cir. 2012) (citing 28 C.F.R. § 35.130(b)). The reasonableness analysis involves "an individualized inquiry" designed "to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration." *PGA Tour, Inc. v.*

11

*Martin*, 532 U.S. 661, 688 (2001).  Plaintiffs seek an accommodation despite not being excluded from their schools.

Plaintiffs are unlikely to demonstrate the reasonableness of their requested modification for two reasons.  First, the requested modification is overly broad, unnecessarily implicating many schools and children.  Plaintiffs do not seek to impose a mask mandate on their particular classrooms or schools, nor do Plaintiffs utilize virtual education options.  Rather, their proposed injunction would require students and staff across Williamson County Schools to wear masks.  Such a sweeping modification is almost certainly unreasonable, as it is inconsistent with "the ADA's basic requirement that the needs of a disabled person be evaluated on an individual basis." *Martin*, 532 U.S. at 690 (emphasis added).

Second, the requested modification does not simply affect Defendants' policies, practices, or activities.  Instead, it affects the practices of third parties, as it requires all children attending Williamson County Schools to wear masks.  Where an accommodation imposes obligations on third parties, not simply the employer or public entity, courts have found it unreasonable.  *See, e.g.*, *Montenez-Denman v. Slater*, No. 98-4426, 2000 U.S. App. LEXIS 3303, at *6-7 (6th Cir. 2000) (deciding an accommodation was unreasonable where it required everyone in plaintiff's work environment to refrain from wearing scents); *Kaufmann v. GMAC Mortg. Corp.*, 229 F. App'x 164, 168 (3d Cir. 2007) (finding it unreasonable for employer to ensure that no one in plaintiff's work environment wore scented products); *McDonald v. Potter*, No. 1:06-CV-1, 2007 U.S. Dist. LEXIS 57983, at *41 (E.D. Tenn. 2007) (imposing a complete fragrance ban on employees is unreasonable).

Plaintiffs' demand to impose a county-wide mask mandate under the ADA and Section 504 are particularly unreasonable because such mandate itself may invite litigation from students

claiming they should be exempted from such a mandate due to their disabilities. *See, e.g.*, *Hernandez v. Roche*, No. 3:20-CV-00263-DCG, 2021 WL 3701861 (W.D. Tex. Aug. 19, 2021); *Emanuel v. Walt Disney Co.*, No. 5:20-CV-04639, 2021 WL 2454462 (E.D. Pa. June 16, 2021*); Giles v. Sprouts Farmers Mkt., Inc.*, No. 20-CV-2131-GPC-JLB, 2021 WL 2072379 (S.D. Cal. May 24, 2021); *Lewis v. Walmart Corp.*, No. 20-CV-2836, 2021 WL 963810 (N.D. Ill. Mar. 15, 2021); *Pletcher v. Giant Eagle Inc.*, No. CV 2:20-754, 2020 WL 6263916 (W.D. Pa. Oct. 23, 2020); see also Elizabeth Pendo et. al., *Resolving Tensions Between Disability Rights Law and Covid-19 Mask Policies*, 80 Md. L. Rev. Online 1, 10 (2020) (arguing that wearing masks is a burden or problem for many people with disabilities).

### C. The Court lacks jurisdiction because Plaintiffs have not exhausted remedies available under the IDEA.

Plaintiffs, who both attend school in person, cannot reasonably claim they have no physical access to the school building. Thus, Plaintiffs must argue that they are being denied educational opportunities because the proffered learning environment is not sufficiently tailored to their disabilities. Such claim amounts to the denial of a Free Appropriate Public Education ("FAPE"), and Plaintiffs must therefore exhaust the administrative remedies available under the IDEA. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 753-55 (2017).

The purpose of the IDEA is "to provide each child with meaningful access to education by offering individualized instruction and related services appropriate to her 'unique needs.'" *Id.* Under federal law, "a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws … 'seeking relief that is also available under' the IDEA [must] first exhaust the IDEA's administrative procedures." *Id.* at 750; *see also* 20 U.S.C. § 1415(l); *Sagan v. Sumner Cnty. Sch. Bd.*, 726 F. Supp. 2d 868, 880 (M.D. Tenn. 2010) ("[A]lthough Plaintiffs proceed under the auspices of the ADA, the Rehabilitation Act, and § 1983, the IDEA nonetheless requires them to

13

first exhaust its administrative procedures and remedies prior to commencing a suit."). The key question in determining whether the IDEA's exhaustion requirement applies is whether the "substance, not surface" of the complaint "seeks relief for the denial of an appropriate education." *Fry*, 137 S. Ct. at 755; *see also* 20 U.S.C. § 1401. "The inquiry . . . does not ride on whether a complaint includes (or, alternatively, omits) the precise words(?) 'FAPE' or 'IEP.'" *Id.*

This exhaustion requirement is necessary to improve the accuracy and efficiency of judicial proceedings involving disabled children. *See Perez v. Sturgis Pub. Sch.*, 3 F.4th 236, 244 (6th Cir. 2021) (citing *Crocker v. Tenn. Secondary Sch. Athletic. Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989)). This process gives "federal courts—generalists with no expertise in the educational needs of handicapped students— . . . the benefit of expert factfinding by a state agency devoted to this very purpose." *Id.* "Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would not only endanger the procedural but also substantive purposes of the [IDEA]." *Crocker*, 873 F.2d at 935.

The IEP is the primary vehicle through which the IDEA ensures that a child receives a FAPE. *See* 20 U.S.C. § 1414(d). The IEP is a written statement of, among other things, the child's present level of academic achievement and functional performance, the manner in which the child's disability affects his or her involvement and progress in the general educational curriculum, the child's academic and functional goals, and the program modifications or supports that school personnel can provide the child to advance toward those goals and to participate in extracurricular and nonacademic activities. *Id.*

The IDEA establishes a formal process for a parent to dispute an element of, or the implementation of, a child's IEP. *See* 20 U.S.C. § 1415. Dissatisfied parents may file a complaint as to any matter concerning the provision of a FAPE with the child's local educational agency

14

("LEA"). 20 U.S.C. § 1415(b)(6). The parties may thereafter pursue a mediation process, or the LEA may convene a preliminary meeting with the parents and relevant members of the child's IEP team. 20 U.S.C. § 1415(e), (f)(1)(B). If the dispute remains unresolved, the matter proceeds to a due process hearing before an impartial hearing officer. 20 U.S.C. § 1415(f)(1)(A). If the hearing is conducted at the local level, the ruling is appealable to the state agency. 20 U.S.C. § 1415(g). A parent who remains dissatisfied with the resolution of that administrative process may then seek judicial review by filing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

To the extent Plaintiffs are dissatisfied with virtual learning options, such claims are precisely the type that the IDEA's administrative process is intended to address. In *R.Z. by B.Z. v. Cincinnati Public Schools*, the parent of a high school student with a cancer-associated cognitive disability filed suit against the student's school district under the IDEA during a time in which his school operated as 100% remote learning because of the COVID-19 pandemic. No. 1:21-cv-140, 2021 WL 3510312, at *1 (S.D. Ohio Aug. 10, 2021). The student, for whom an IEP had previously been developed, alleged that, as a result of his disability, he "face[d] challenges during remote learning" and required in-person instruction in order to receive the education to which he was entitled. *Id.* at *3, 7. The school district filed a motion to dismiss based on the plaintiff's failure to exhaust the IDEA's administrative process. *Id.* at *2. In granting the district's motion, the court concluded that the student's allegations required the type of individualized analysis that forms the bedrock of the IDEA administrative process. *Id.* at *7-8. Further, the court expressed that "simply adding allegations that other students with disabilities might also have been impacted does not suffice to forego the administrative exhaustion that the IDEA requires." *Id.* at 8.

The point is that the challenges facing each student are unique to that student. And the remedies available to each are unique. *See B.Z.*, 2021 WL 3510312, at *6 ("One student's IEP

may need to be modified for remote learning during a pandemic, while another student's IEP may remain unchanged.") The IDEA's administrative process is thus designed to afford each student the individualized accommodation that best fits their particular circumstance and must be exhausted prior to any relief from the Court.

## V.     The Public Interest Counsels Against Issuing A TRO.

Because Plaintiffs sue the Governor in his official capacity, the "public interest" and "balance of the equities" factors merge. See *Nken v. Holder*, 556 U.S. 418, 435 (2009).

As the Sixth Circuit has recognized, "[s]haping the precise contours of public health measures entails some difficult line-drawing. Our Constitution wisely leaves that task to officials directly accountable to the people." *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 129 (6th Cir. 2020); *see also S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613-14 (Roberts, C.J., concurring) ("Our Constitution principally entrusts "[t]he safety and the health of the people" to the politically accountable officials of the States "to guard and protect." (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905))).

Granting an injunction subverts the democratic process. *Cf. Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers.) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The people of Tennessee have been actively debating the topic of masks and rely on their elected officials to be responsive to their issues. Governor Lee announced EO 84 just days after a mask mandate in Williamson County led to heated confrontations at a school board meeting which required police intervention. Issuing an injunction takes power away from officials can offer Plaintiffs particularized plans dealing with thorny issues, such as dealing with students who cannot, for medical reasons, wear masks.

16

Moreover, EO 84 carefully balances public safety needs with the constitutional right of parents to direct the education of their children. *See Barrett v. Steubenville City Schs.*, 388 F.3d 967, 972 (6th Cir. 2004) ("Both the Supreme Court and this court have repeatedly recognized that parents have a fundamental right to raise their children, including directing their children's education" (citing cases)); *see also Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35 (1925) (striking a down a statute that "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of their children"). An injunction that mandates mask-wearing interferes with the individualized choice of thousands of parents in Williamson County, and ultimately millions of parents in Tennessee. Such an injunction overriding the wishes of families is not in the public interest, particularly in light of the Plaintiffs' failure to seek any individualized solutions for their situations.

## CONCLUSION

For the foregoing reasons, the Court should DENY Plaintiffs' application for a Temporary Restraining Order and schedule a preliminary injunction hearing no sooner than Wednesday, September 29, 2021 to allow the Governor the opportunity to fully present his defenses.

Respectfully submitted,

HERBERT H. SLATERY III
ATTORNEY GENERAL AND REPORTER

*/s/ Reed Smith*
*Reed Smith VA Bar No. 77334
Acting Assistant Attorney General
*Admitted Pro Hac Vice*
Office of the Tennessee Attorney General
Health Care Division
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-9593
Reed.Smith@ag.tn.gov

17

Colleen E. Mallea, BPR #032238
Assistant Attorney General
Education and Employment Division
P.O. Box 20207
Nashville, TN 37202-0207
(615) 741-2472
colleen.mallea@ag.tn.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, a copy of the foregoing Notice of Limited Appearance was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

Brice M. Timmons
Donati Law Firm LLP
1545 Union Avenue
Memphis, TN 38104
brice@donatilaw.com
*Counsel for Plaintiffs*

Bryce W. Ashby
Donati Law Firm LLP
1545 Union Avenue
Memphis, TN 38104
bryce@donatilaw.com
*Counsel for Plaintiffs*

Craig A. Edgington
Donati Law Firm LLP
1545 Union Avenue
Memphis, TN 38104
craig@donatilaw.com

*Counsel for Plaintiffs*
Robert A. Donati
Donati Law Firm LLP
1545 Union Avenue
Memphis, TN 38104
robert@donatilaw.com
*Counsel for Plaintiffs*

18

Jessica F. Salonus
The Salonus Firm, PLC
139 Stonebridge Blvd.
Jackson, TN 38305
jsalonus@salonusfirm.com
*Counsel for Plaintiffs*

Justin S. Gilbert
Gilbert Law, PLC
100 W. Martin Luther King Boulevard, Suite 501
Chattanooga, TN 37402
justin@schoolandworklaw.com
*Counsel for Plaintiffs*

Courtney M. King
Buerger, Moseley & Carson, PLC
306 Public Square
Franklin, TN 37064
cking@buergerlaw.com
*Counsel for Defendant Williamson County Board of Education*

Lisa M. Carson
Buerger, Moseley & Carson, PLC
306 Public Square
Franklin, TN 37064
lcarson@buergerlaw.com
*Counsel for Defendant Williamson County Board of Education*

Charles W. Cagle
Lewis, Thomason, King, Krieg & Waldrop, P.C. (Nashville)
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
ccagle@lewisthomason.com
*Counsel for Defendant Franklin Special School District*

 *s/ Reed N. Smith*
Reed N. Smith, (VA BN 77334)*
Assistant Attorney General
***admitted pro hac vice*

19