# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **R.K. et al.,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:21-cv-00725 |
| ) | |
| **GOVERNOR BILL LEE, in his official** ) | |
| **capacity as GOVERNOR OF** ) | |
| **TENNESSEE et al.,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, R.K. and W.S. are two disabled public-school students who brought this action against Governor Bill Lee, the Williamson County Board of Education ("Williamson County"), and the Franklin Special School District ("Franklin"). They seek relief for themselves as well as a "class of similarly situated individuals consisting of all students with disabilities that make them medically vulnerable to severe infection and/or death from COVID-19 and who attend public school in Williamson County, Tennessee." (Doc. No. 1 ¶ 46). Plaintiffs seek to enjoin the Governor from enforcing Executive Order No. 84, which allows parents to opt their children out of Williamson County's and Franklin's temporary universal mask mandate requirements. Plaintiffs allege that Executive Order No. 84, to which the Williamson County and Franklin school systems must adhere, violates the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et seq.*, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a).

Defendants have each responded. (Doc. Nos. 15, 16). Governor Lee filed a response opposing Plaintiffs' request for injunctive relief. (Doc. No. 16). Williamson County filed a response indicating that it takes "no position" on Plaintiffs' request. (Doc. No. 15). Franklin

Special School District did not file a response but stated on the record in open court on September 20, 2021 that it adopted Williamson County's response. (Doc. No. 18).

For the following reasons, the Court finds that, based on the record before the Court, Plaintiffs have met the standard for issuance of a temporary injunction prohibiting the enforcement of Executive Order No. 84 pending the evidentiary hearing set on October 5, 2021. (Id.).

## I. PRELIMINARY FACTUAL FINDINGS

### A. Executive Order No. 84 and the Plaintiffs' Lawsuit

On August 16, 2021, Governor Lee issued Executive Order No. 84, which states that "a student's parent or guardian shall have the right to opt out of any order or requirement for a student in kindergarten through twelfth-grade to wear a face covering at school, on a school bus, or at school functions, by affirmatively notifying in writing the local education agency or personnel at the student's school." See Exec. Order No. 84, State of Tennessee (August 16, 2021). There is no requirement that parents have a reason to exercise the opt-out. (Id.).

Plaintiffs are at high risk for severe COVID-19 infection due to their underlying health conditions. (Doc. No. 4-1 at 2, 4; see also Doc. Nos. 4-3 ¶ 7, 4-6 ¶¶ 13, 19). They are seeking a "reasonable accommodation" of universal mask mandates because they "are medically vulnerable to severe outcomes should they become infected with COVID-19." (Id. ¶ 12; see also Doc. No. 4-3 ¶ 13). They also seek protection against discrimination under the ADA and Section 504. (Doc. No. 4-1 at 10).

R.K. is a 13-year-old seventh grader in Williamson County with Down syndrome. (Id. at 5; see also Doc. Nos. 1 ¶ 12, 4-3 ¶ 2). According to R.K.'s mother, R.K. is "four times more likely to be hospitalized and ten times more likely to die as a result [COVID-19] as compared with the general population." (Doc. No. 4-3 ¶ 3). R.K's mother also believes that in "one of [her] children's

2

elementary schools, there are 5 children in just one classroom who have tested positive for COVID-19, but the other students in that classroom are still in school and are not even required to wear a mask." (Id. ¶ 10). As a result, R.K.'s mother has "instructed R.K.'s teachers to help her keep her distance as best as possible so as to try to lessen the risk that her teachers might spread COVID-19 to her as they also have a high mask opt-out rate." (Id. ¶ 12). But these requests, she says, "do nothing to mitigate the true danger that [R.K.] is in [because of] the number of unmasked students, teachers, and staff at her school." (Id.).

W.S. is a seven-year-old second grader at Franklin with type-1 diabetes. (Doc. No. 4-1 at 6; see also Doc. No. 4-4 ¶¶ 2–3). According to W.S.'s mother, W.S. was infected with COVID-19 at school due to inadequate mask wearing compounded by Executive Order No. 84. (See Doc. No. 4-4 ¶ 8). W.S.'s infection "required 14 straight intensive hours of effort and consultation with her treating physician to regulate her blood sugar levels back to a normal range." (Doc. No. 1 ¶ 13; see also Doc. No. 4-4 ¶¶ 7–9). W.S. is not old enough to be vaccinated, and her mother believes that many of W.S.'s classmates have opted out of wearing masks. (Doc. No. 4-4 ¶¶ 7, 10). W.S.'s mother remains concerned "that [W.S.] may be reinfected if her school does not universally require masks for all students and teachers." (Id.).

B. The State of COVID-19 Amongst Children in Tennessee

It is hard to find a corner of American society that has not been affected by COVID-19 over the past eighteen months. According to the Centers for Disease Control ("CDC") the virus' ubiquity is due, in part, to the ease with which it spreads when people cough, sneeze, or even talk. See CDC, Scientific Brief: SARS-CoV-2 Transmission (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html; (see also Doc. Nos. 4-5 ¶ 11, 4-6 ¶ 8).

3

Those with underlying health conditions, including children, are at an increased risk for severe infection, hospitalization, or death from COVID-19. (Doc. No. 4-6 ¶ 13). The CDC has found that "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19." CDC, COVID-19: People with Certain Medical Conditions (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov-need-extra-precauations/people-with-medical-conditions.html. "[C]hildren with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19." Id.; (see also Doc. Nos. 4-5, 4-6). Plaintiffs' expert[1] Dr. Sarah Williams confirmed the risk to disabled students and noted that "at least one" child with a preexisting condition placing them at a heightened risk for serious COVID-19 infection "is present in nearly every classroom in Williamson County." (Doc. No. 4-6 ¶ 16).

The spread of the Delta variant, which is twice as contagious as prior variants, poses an especially foreboding threat to children with underlying conditions. (Doc. Nos. 4-5 ¶ 8, 4-6 ¶ 6). According to Dr. Williams, the Delta variant has contributed to "increasing numbers of break through cases in children and adults alike who have been vaccinated." (Doc. No. 4-6 ¶ 19). Recently, children accounted for 36% of all COVID-19 cases in Tennessee. (Doc. No. 4-1 at 5). And cases continue to spike in Williamson County. (Doc. Nos. 4-3 ¶ 9, 4-6 ¶ 6). In August 2021, 33% of students and 30% of staff were absent from Williamson County middle schools alone due

---

[1] Plaintiffs provide two declarations by medical doctors, Dr. Sarah Williams and Dr. Sara Cross (See Doc. Nos. 4-5, 4-6). Both Dr. Williams and Dr. Cross appear to satisfy the expert witness standards under Federal Rule of Evidence 702, and the Court will give weight to their testimony accordingly. See Fed. R. Evid. 702; see also U.S. v. Frazier, 442 F. Supp. 3d 1012, 1016 (M.D. Tenn. 2020); Norsworthy v. Beard, 87 F. Supp. 3d 1164, 1180–84 (N.D. Cal. 2015) (accepting medical expert's testimony under Rule 702 in ruling on a plaintiff's motion for injunctive relief).

to COVID-19. (Doc. No. 1-1). It appears that Williamson County schools may have had at least 55 staff members and 170 students in isolation with a confirmed positive case of COVID-19 every week from September 3, 2021 through September 21, 2021. See Williamson County Schools, COVID-19 Numbers 2021-22 (September 21, 2021), https://www.wcs.edu/Page/8641.

    C.  <u>Mitigation Efforts by Schools to Curb the Spread of COVID-19</u>

The CDC has found that masks are effective in reducing the spread of COVID-19. (See Doc. No. 4-6 ¶ 25 (citing D.K. Chu et al., <u>Physical distancing, face masks, and eye protection to prevent person-to-person transmission of SARS-CoV-2 and COVID-19: A systematic review and meta-analysis</u>. 395 THE LANCET 1973–87 (2020)); <u>see also</u> CDC, Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2 (May 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html. Health experts and school officials in Tennessee agree that masks are effective. (See Doc. No. 4-5 ¶¶ 12–17; <u>see also</u> Doc. No. 4-6 ¶¶ 25, 28). Indeed, even Governor Lee has admitted that "[i]f you want to protect your kid from the [COVID-19] virus or from quarantine, the best way to do that is to have your kid in school with a mask." Kimberlee Kruesi, Health chief: Children now 36% of Tennessee's virus cases, AP NEWS (Aug. 25, 2021), https://apnews.com/article/health-coronavirus-pandemic-tennessee-32b7ff0dc540a2b11cc8c736c67020fe#:~:text=Mark%20Humphrey%2C%20File)-,NASHVILLE%2C%20Tenn.,Commissioner%20Lisa%20Piercey%20said%20Wednesday. And according to Dr. Sara Cross, who was appointed by Governor Lee to Tennessee's Coronavirus Task Force, "the failure to implement a universal masking policy in schools will likely lead to extremely high rates of transmission of COVID-19 in the classroom setting." (Doc. No. 4-5 ¶¶ 4, 20).

5

In August 2021, recognizing that their schools were reaching a "crisis point" due to the rapid spread of new COVID-19 cases, both the Williamson County and Franklin school systems implemented temporary universal mask mandates for all students, staff, and visitors, except for those who have a medical condition or sincerely held religious belief. (See Doc. Nos. 1-1, 23, 24, 26, 27). Franklin based its mandate on several objective, science-based, and "important factors," including: (1) the quadrupling of new COVID cases in Franklin students and staff between Week 1 and Week 2; (2) that children 11 and younger remain ineligible for a COVID-19 vaccine; (3) according to the CDC, Williamson County has been in the "high range for community transmission since July 22,"; and (4) the Delta variant "spreads more easily than previous variants, and can be spread by vaccinated individuals." See Franklin Special School District, Messages from the Director (August 20, 2021), https://www.fssd.org/about-us/fssd-together-2021#fs-panel-13348.

On September 20, 2021, recognizing the continued threat of COVID-19 and the Delta variant, each school system extended their respective temporary universal mask mandates until at least mid-January 2022. (Doc. Nos. 23, 24, 26, 27). In doing so, Williamson County noted that "COVID numbers in the schools had declined since the mandate was implemented, and a majority of the elected Board determined that continuation of the mandate through the end of the semester would be the best approach and would limit disruption to school operations." (Doc. No. 23 at 1–2). Similarly, Franklin noted that "[u]niversal masking, in conjunction with other mitigation strategies, remains the best way to ensure a safe learning environment for all children." (Doc. No. 26 at 2).

Following Governor Lee's Executive Order, both Williamson County and Franklin amended their temporary universal mask policies to allow for voluntary parental opt-out for any reason. (Doc. Nos. 23, 24, 26, 27). As many as 13,231 children—nearly 32% of the student body—

6

have opted out of Williamson County's amended masking policy. (See Doc. No. 1 ¶ 41). Approximately 200 Franklin students, or 10% of the student body, have similarly opted out.[2]

## II. LEGAL STANDARD

Plaintiffs now seek immediate injunctive relief under Federal Rule of Civil Procedure 65. (See Doc. No. 4). Specifically, Plaintiffs request that the Court: (1) enjoin Governor Lee "from enforcing Executive Order No. 84 allowing parents to opt-out of a universal mask mandate policy," and (2) order the Williamson County Board of Education and Franklin Special School District "to implement a universal mask mandate" without parental opt-out as "a reasonable accommodation under the ADA and Section 504 of the Rehabilitation Act." (Doc. No. 4 at 1). Neither Williamson County nor Franklin oppose Plaintiffs' request for immediate injunctive relief. (See Doc. Nos. 15, 26). Williamson County argues that it "cannot fully enforce" its mask mandate due to Executive Order No. 84. (Doc. No. 15 at 3). And Franklin argues that it "believes that universal masking is in students' best interest at this stage of the COVID-19 pandemic," and that "[i]n the absence of Executive Order 84, [its] mask policy would almost certainly be more stringent." (Doc. No. 26 at 2).

"The purpose of [injunctive relief] under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." Procter & Gamble Co. v. Bankers Tr. Co., 78 F.3d 219, 226 (6th Cir. 1996) (internal citation omitted). However, immediate injunctive relief is "an extraordinary remed[y] which should be granted only if the movant carries [its] burden of proving that the circumstances clearly demand it." Tenn. Guardrail, Inc. v. Tenn. Dep't. of Transp., No.

---

[2] Although Franklin has not published its opt-out rates, the school's counsel confirmed this figure on the record in open court on September 20, 2021. (See Doc. No. 18).

3:11-cv-01010, 2011 WL 5153086, at *1 (M.D. Tenn. Oct. 28, 2011); see also First Tech. Safety Sys., Inc. v. Depinet, 11 F.3d 641, 650 (6th Cir. 1993).

In determining whether to issue immediate injunctive relief under Rule 65, the Court must consider the following four factors: "(1) whether the moving party has shown a likelihood of success on the merits; (2) whether the moving party will be irreparably injured absent an injunction; (3) whether issuing an injunction will harm other parties to the litigation; and (4) whether an injunction is in the public interest." Vitolo v. Guzman, 999 F.3d 353, 360 (6th Cir. 2021) (citing Nken v. Holder, 556 U.S. 418 (2009)); see also Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006) (noting that the same four factors apply regardless of the type of injunctive relief sought). "These factors are not prerequisites but are factors that are to be balanced against each other." Jones v. Caruso, 569 F.3d 258, 265 (6th Cir. 2009).

## III. ANALYSIS

Having carefully considered the entire record, especially affidavits and declarations, the Court concludes that immediate injunctive relief should issue. The Court will discuss each factor in turn.

### A. Likelihood of Success on the Merits

Plaintiffs argue that Executive Order No. 84 and the school system's temporary universal amended mask policies "have nullified the rights of students with disabilities to enjoy safe, fundamental, and non-discriminatory access to their public institutions." (Doc. No. 4-1 at 3). As a result, Plaintiffs argue that they are likely to succeed on the merits because: (1) under the ADA and Section 504, they are qualified individuals with disabilities who are entitled to reasonable accommodations and protections from unlawful discrimination; and (2) Executive Order No. 84

8

denies them their right and opportunity to participate in the educational services of their public-school districts guaranteed under the ADA and Section 504. (Id. at 10–11). Governor Lee counters that Plaintiffs: (1) cannot satisfy the legal standard for immediate injunctive relief; (2) are barred by the doctrine of laches; and (3) failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act. (See Doc. No. 16).

1. The ADA and Section 504

The U.S. Constitution enshrines the principle that federal law is "the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Therefore, a state law that interferes with federal law is invalid. See ARC of Iowa v. Reynolds, __ F. Supp. 3d __, __, 2021 WL 4166728, at *10 (S.D. Iowa Sept. 13, 2021) (citing Hillsborough Cty. v. Automated Med. Laboratories, Inc., 471 U.S. 707, 712 (1985)). "Under the Supremacy Clause, federal law may supersede state law" when "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. (citing Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). Here, Plaintiffs argue that Executive Order No. 84 violates federal law, namely the ADA and Section 504 of the Rehabilitation Act. (See Doc. No. 4-1 at 10–11).

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also Wilson v. Gregory, 3 F.4th 844, 859 (6th Cir. 2021). Section 504 employs similar language, providing that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). In the Sixth Circuit, claims brought under the ADA

9

and Section 504 "share the same substantive standard," and Courts review each as if brought under the ADA. Zibbell v. Mich. Dep't of Human Servs., 313 F. App'x 843, 849 (6th Cir. 2009).

Plaintiffs first raise a failure to accommodate claim under the ADA. (Doc. No. 4-1 at 11). To establish a failure to accommodate claim, Plaintiffs must show that: "(1) [they are] disabled; (2) [they were] 'qualified' to take part in the 'services, programs, or activities' of the public entity; (3) [they were] 'excluded from participation in' or 'denied the benefits of' such 'services, programs, or activities'; and (4) this exclusion or denial occurred 'by reason of' [their] disability." Keller v. Chippewa Cty., Michigan Bd. of Commissioners, No. 20-2086, __ F. App'x __, __, 2021 WL 2411873, at *4 (6th Cir. June 14, 2021) (citing 42 U.S.C. § 12132); see also Ability Ctr. of Greater Toledo, 385 F.3d 901, 909–10 (6th Cir. 2004).

Governor Lee does not directly address the first two elements of a failure to accommodate claim. Nonetheless, the Court finds that Plaintiffs have sufficiently shown at this stage that they satisfy these elements. First, Plaintiffs are disabled under the meaning of the ADA. See 42 U.S.C. § 12102(1)(A) (defining "disability" as "a physical or mental impairment that substantially limits one or more major life activities"). And second, because Plaintiffs are public school students in either the Williamson County or Franklin school systems, they are "thus entitled to participate in the programs, services, and activities of their schools." ARC of Iowa, 2021 WL 4166728, at *11; see also G.S. v. Lee, __ F. Supp. 3d __, __, 2021 WL 4057812, at *8 (W.D. Tenn. Sept. 3, 2021). (finding that similarly situated plaintiffs established the first two elements of a failure to accommodate claim).

The crux of whether Plaintiffs are likely to succeed on the merits depends on whether they can establish the third and fourth elements of a failure to accommodate claim: that they were excluded from the programs, services, and activities of their schools by reason of their disability.

10

See Keller, 2021 WL 2411873, at *4. Governor Lee argues that Plaintiffs have neither been discriminated against nor excluded from the programs, services, and activities of their respective schools because they do not "seek to impose a mask mandate on their particular classrooms or schools, nor do [they] utilize virtual education options." (Doc. No. 16 at 12). But the Court disagrees. ADA implementing regulations require that "[a] public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150. Further, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of the disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). There is no legal doubt that Governor Lee is a "public entity" subject to the ADA and its regulations. See 42 U.S.C. § 12131(1). As a result of the Governor's Executive Order No. 84, Plaintiffs and their putative class are unable to enjoy educational services, programs, and activities without placing their lives at risk due to their disability. The Williamson County and Franklin school systems are being suppressed by Executive Order No. 84 from giving Plaintiffs the effective accommodation of a temporary universal mask mandate for all students and teachers. At this juncture, Executive Order No. 84 appears to violate federal law and must yield. See Danville Christian Academy, Inc. v. Beshear, 503 F. Supp. 3d 516, 531 (E.D. Ky. 2020) (enjoining a state executive order for violation of federal law); see also League of Independent Fitness Facilities and Trainers, Inc. v. Whitmer, 468 F. Supp. 3d 940, 952 (W.D. Mich. 2020) (same).

Here, Plaintiffs have alleged that in-person learning is neither safe nor readily accessible to them by reason of Executive Order No. 84. (See Doc. No. 4-1 at 10–11; see also Doc. Nos. 1-

11

1, 4-3, 4-4, 4-5, 4-6). So, Plaintiffs argue that Governor Lee's order discriminates against them by reason of their disability, forcing them to face a prevalent threat of infection every time they access public educational programs and services. (Doc. No. 4-1 at 11–12; see also Doc. Nos. 1-1, 4-5, 4-6). As a result, Plaintiffs correctly claim that Williamson County's and Franklin's educational services, programs, and activities, "when viewed in [their] entirety, [are not] readily accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.130. It appears that Plaintiffs are entitled to the anti-discrimination protections in the ADA and Section 504.

The Governor also argues that Plaintiffs cannot establish a failure to accommodate claim because the remedy Plaintiffs request—universal mask mandates for students—is not a reasonable accommodation, "is overly broad," requires significant resources to implement, and is inconsistent with the individualized approach required under the ADA. (Doc. No. 16 at 12). But these arguments are also unpersuasive, as federal courts have recently found that "[a] universal masking requirement instituted by a school is a reasonable modification that would enable disabled students to have equal access to the necessary in-person school programs, services, and activities." ARC of Iowa, 2021 WL 4166728, at *11. Governor Lee has offered no affidavits, declarations, or any other factual predicate to support his assertion that universal mask mandates would require significant resources. Nor would such a requirement "alter the nature of the services that public schools provide." Id. Williamson County's and Franklin's mask mandates, which have been restricted by Executive Order No. 84, are reasonable accommodations for thousands of disabled students, in perhaps nearly every classroom in Williamson County. (See Doc. No. 4-6 ¶ 16). Accordingly, based on the record, the Court finds that Plaintiffs are likely to succeed on the merits, and this factor weighs in their favor.

2. Laches

The Governor also argues that the doctrine of laches bars Plaintiffs from relief. (Doc. No. 16 at 16). Laches is "principally a question of the inequity of permitting [a] claim to be enforced." Kehoe v. Component Sales Inc. v. Best Lighting Prods., 796 F.3d 576, 585 (6th Cir. 2015). The doctrine is derived from the principle that "equity aids the vigilant, not those who slumber on their rights." Lucking v. Schram, 117 F.2d 160, 162 (6th Cir. 1941). "Ordinarily, a party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." Kehoe, 796 F.3d at 584; see also State ex rel. Elvis Presley Intern. Memorial Foundation v. Crowell, 733 S.W.2d 89, 101 (Tenn. Ct. App. 1987) (noting the same elements).

Here, the Governor argues that Plaintiffs "unreasonably delayed in seeking" injunctive relief because they filed their complaint more than a month after Executive Order No. 84 was issued. (Doc. No. 16 at 5). But that argument is unavailing. On the record before the Court at this stage of the proceedings, there is no evidence that Plaintiffs acted "unreasonably" or with a "lack of diligence." Kehoe, 796 F.3d at 584. If anything, the record reflects—as Plaintiffs painstakingly recount—the swift and unpredictable increase in COVID-19 cases in Williamson County since Governor Lee issued Executive Order No. 84. (See Doc. Nos. 1-1, 4-5, 4-6). Nor would Governor Lee have been prejudiced, even were there a delay. The Governor has not specifically articulated prejudice beyond conclusory assertions and is in the same position defending against Plaintiffs' request for injunctive relief now as he would have been one month ago. See Lichtenstein v. Hargett, 489 F. Supp. 3d 742, 754 (M.D. Tenn. 2020) ("[T]he Court need not decide whether Plaintiffs unreasonably delayed, because Defendants have not shown prejudice of the kind required

13

to support the application of laches."); see also Depositors Ins. Co. v. Estate of Ryan, 637 F. App'x 864, 871 (6th Cir. 2016). Accordingly, the Court rejects Governor Lee's laches argument.

3. Exhaustion

Governor Lee also argues that Plaintiffs have failed to exhaust their administrative remedies required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. (Doc. No. 16 at 13–15). Under the IDEA, "an 'individualized education program,' called IEP for short, serves as the 'primary vehicle' for providing each child with" the "free and appropriate public education" ("FAPE") required under the Act. ARC of Iowa, 2021 WL 4166728, at *7 (citing Fry v. Napoleon Cmty. Schs., 580 U.S. __, __, 137 S. Ct. 743, 749, 197 L.Ed.2d 46 (2017)).

But the Court need not spill significant ink in addressing this argument because if "the remedy sought is not for the denial of a FAPE, then exhaustion of the IDEA's procedures is not required." Id. (citing Fry, 137 S. Ct. at 754). In this case, Plaintiffs' remedy is not for the denial of a FAPE; instead, Plaintiffs seek relief from the educational harm caused by Executive Order No. 84. (See Doc. No. 4-1 at 10–11). Indeed, Judge Sheryl Lipman of the Western District of Tennessee recently rejected the same argument by the Governor in similarly situated plaintiffs' challenge to Executive Order No. 84. G.S., 2021 WL 4057812, at *5–6. Judge Lipman concluded that the IDEA exhaustion requirement was inapplicable because "Plaintiffs seek redress from the harm caused by an Executive Order that prevents their ability to access critical public programs and services." Id. at *5 (emphasis supplied). This Court agrees with Judge Lipman. Here, Plaintiffs' arguments are identical; they argue that Governor Lee's order restricts the protections that would otherwise be afforded by the Williamson County and Franklin school systems' temporary universal mandatory

14

mask mandates. (See Doc. No. 4 at 1; see also Doc. No. 4-1 at 10–11). Accordingly, the Court rejects Governor Lee's exhaustion arguments under the IDEA.

B. Irreparable Harm

Plaintiffs next argue that they would be subject to irreparable harm should Executive Order No. 84 remain in place because they would be subject to increased exposure to severe illness—and possibly death—merely by accessing educational opportunities in their respective school buildings. (Doc. No. 4-1 at 12–13). The Governor offers no opposition. In the Western District of Tennessee challenge to Executive Order No. 84, Judge Lipman found that irreparable harm existed on a similar record, concluding that because plaintiffs pled that "school has been in session for more than 3 weeks, a significant number of the student body has already opted-out of the county-wide mask mandate, and the number of students infected with COVID-19 or exposed, warranting quarantine continues to rise," plaintiffs were "denied the benefits of an in-person public education." G.S., 2021 WL 4057812, at *8. The same is true in Williamson County.

Based on the record before the Court, due to the rise in COVID-19 cases in Williamson County, including at Plaintiffs' schools, along with a significant number of students who have opted out, Plaintiffs have likewise been denied access to a safe, in-person education experience. (See Doc. No. 1 ¶¶ 56–78; see also Doc. No. 4-1 at 12–13). R.K.'s mother declared that "[w]ith the rise in COVID-19 infections in Williamson County," she is "concerned about [R.K.'s] safety unless proper mitigating efforts were made to reduce the risk of her infection with COVID-19." (Doc. No. 4-3 ¶ 9). Similarly, W.S.'s mother remains "concerned that [W.S.] may be reinfected if [the Franklin school system] does not universally require masks for all students and teachers." (Doc. No. 4-4 ¶ 10). And Dr. Cross lamented that "the failure to implement a universal masking policy in schools will likely lead to extremely high rates of transmission of COVID-19." (Doc.

15

No. 4-5 ¶ 20). That disabled students are at a significantly higher risk for severe infection and are exposed at a higher rate following Executive Order No. 84 is itself an irreparable harm that justifies injunctive relief. (See Doc. No. 4-6 ¶¶ 13, 19). Accordingly, the Court finds that Plaintiffs face irreparable harm to justify immediate injunctive relief, and that this factor weighs in their favor.

### C. Harm to Others and the Public Interest

When the government opposes injunctive relief, the third and fourth elements merge. See Nken v. Holder, 556 U.S. 418, 435 (2009). The Court must then balance any harm with the public interest. Id.; see also ARC of Iowa, 2021 WL 4166728, at *12. Plaintiffs argue there would be no harm suffered by the Governor because the public is benefitted by: (1) enforcement of the ADA; (2) protection of public health; (3) a reduced risk and spread of COVID-19 among schools; and (4) reduced strain on hospital resources for those requiring care. (Doc. No. 4-1 at 14). The Governor counters that the public interest weighs against the Court issuing injunctive relief because "[g]ranting an injunction subverts the democratic process" and improperly interferes with the "individualized choice of thousands of parents in Williamson County." (Doc. No. 16 at 16–17). Unlike Governor Lee's unilateral decision to issue Executive Order No. 84, the elected board members of the Williamson County and Franklin school systems have voted that temporary universal mask mandates are necessary to protect and safeguard adults and children. (See Doc. Nos. 23, 24, 26, 27). They are in the best seat to determine what is best for the children of Williamson County.

The Court therefore agrees with Plaintiffs. "The government's interest is the public interest." Pursuing America's Greatness v. Fed. Election Comm'n, 831 F.3d 500, 512 (D.C. Cir. 2016) (citing Nken, 556 U.S. at 435). And the public interest favors injunctive relief, as it is "served by the enforcement of the ADA." Wilborn ex rel. Wilborn v. Marin, 965 F. Supp. 2d 834, 848

16

(M.D. Tenn. 2013); see also Hostettler v. Coll. of Wooster, 895 F.3d 844, 853 (6th Cir. 2018). The public interest is also served by the protection of public health and certainly protecting children in the care of the Williamson County and Franklin school systems. See G.S., 2021 WL 4057812, at *8 (citing Neinast v. Bd. of Trs. of the Columbus Metro. Library, 346 F.3d 585, 594 (6th Cir. 2003)). The record at this stage shows that temporary universal mask mandates adopted by the Williamson County and Franklin school systems have been, and likely would continue to be, effective in curbing the spread of COVID-19. (Doc. Nos. 1-1, 4-5 ¶ 12, 4-6 ¶¶ 20, 23, 24, 26, 27). Critically, neither Williamson County nor Franklin oppose the issuance of injunctive relief. (See Doc. No. 15). Accordingly, the Court finds that the public interest favors immediate injunctive relief.

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for immediate injunctive relief (Doc. No. 4) is **GRANTED**. Accordingly, the Court orders that:

1. Defendant Governor Lee is **ENJOINED** from enforcing Executive Order No. 84 in Williamson County or allowing parents to opt out of either the Williamson County Board of Education or Franklin Special School System's mask mandates on a purely voluntary basis;

2. Defendants Williamson County Board of Education and Franklin Special School District are **ORDERED** to enforce their mask policies without exception for Executive Order No. 84;

3. The Court finds that no bond is required.

4. This injunctive relief shall remain in effect until **11:59 p.m. on Tuesday, October 5, 2021** unless extended by this Court;

5. The Court is entering this Order to prevent further injury, damage, and loss to Plaintiffs.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

18

Case 3:21-cv-00725   Document 30   Filed 09/24/21   Page 18 of 18 PageID #: 238