UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| R.K., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:21-cv-00725 |
| ) | |
| GOVERNOR BILL LEE, in his official ) | Chief Judge Crenshaw |
| capacity as GOVERNOR OF TENNESSEE, *et al.*, ) | Magistrate Judge Frensley |
| ) | |
| ) | |
| Defendants. ) | |

### RESPONSE TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE
### JAY BHATTACHARYA, M.D., Ph.D.

Plaintiffs' Motion in Limine to Preclude Dr. Bhattacharya's testimony at the October 13 preliminary injunction hearing does not contain even the pretense of a *Daubert* analysis. Neither does it cite a single case that would support the exclusion of his expert testimony about the effectiveness of masking generally or mask mandates in particular. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). This is not surprising, given that there is no basis in law for excluding or limiting Dr. Bhattacharya's testimony in this case.

> Under Rule 702 of the Federal Rules of Evidence, "a proposed expert's opinion is admissible, at the discretion of the trial court, if the opinion satisfies three requirements. First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable.

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 323 (6th Cir. 2015).

For the past twenty years, Dr. Bhattacharya, who is a Stanford-trained medical doctor and Ph.D. in Economics, has been a professor at the Stanford School of Medicine. His work has been

1

published in peer-reviewed journals and books on a wide-range of relevant topics, including COVID-19, COVID-19 policy health policy, health economics, infectious disease, disabilities (including disabilities in youth), and behavioral and developmental issues in children.

Notably, despite offering three witnesses (two of them offered as rebuttal witnesses even before Dr. Bhattacharya's testimony) to counter his declaration, none of the witnesses proffered any basis to exclude Dr. Bhattacharya's expert testimony under a *Daubert* analysis. If anything, the testimony of Plaintiffs' rebuttal witnesses, although they disagree with his conclusions, support a finding that his testimony meets the Rule 702 criteria for admissibility. As to qualifications, Dr. Augustyn testified that Dr. Bhattacharya's credentials and education are impressive. As to reliability, Dr. Ker acknowledged that it is common for medical professionals to review medical studies like those at issue and draw conclusions from them. Although Dr. Augustyn testified that Dr. Bhattacharya is not qualified to opine on child developmental issues due to conclusions stated in his declaration, an expert's conclusions are not a basis for exclusion under a *Daubert* analysis. *Lee v. Smith & Wesson Corp.*, 760 F.3d 523, 526 (6th Cir. 2014) ("'The [Rule 702] inquiry is a flexible one ... [and its focus] must be solely on principles and methodology, not on the conclusions that they generate.'" (quoting *Daubert*, 509 U.S. at 595)).

For these reasons, and the reasons that follow, the Court should admit Dr. Bhattacharya's testimony as to the issues addressed in his declaration (ECF 42).

## BACKGROUND

Plaintiffs seek a "universal" mask mandate (with medical and religious exemptions) in Williamson County Schools and Franklin Special School District. As such, the Plaintiffs have asked the Court to enjoin the operation of Executive Order 84, which has since expired, but has been extended in substance by Executive Order 89 through November 5, 2021. One aspect of Plaintiffs' burden in seeking a preliminary injunction to impose such an injunction is to show that the marginal effect of the executive orders, which allow schools to implement mask mandates subject to a written parental opt-out, causes them to be excluded from education. Accordingly, the testimony of Dr. Bhattacharya, who has decades of research on relevant topics, including public health, COVID-19 and COVID-19 Health Policy, on the effectiveness of masking generally or mask mandates in particular in preventing or reducing the spread of COVID-19 is highly relevant to this case.

## ARGUMENT

**I.     Rule 702 and *Daubert* provide that expert testimony should be liberally admitted.**

Federal Rule of Evidence 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)     the testimony is based upon sufficient facts or data;
>
> (c)     the testimony is the product of reliable principles and methods; and
>
> (d)     the witness has reliably applied the principles and methods to the facts of the case.

3

Fed. R. Evid. 702. In the Sixth Circuit, Rule 702 has been interpreted as encompassing three factors: (1) requisite qualifications, experience, and training, (2) relevance, and (3) reliability. *See Superior Prod. P'ship,* 784 F.3d at 323.

In *Daubert*, the Supreme Court held that the Federal Rules of Evidence superseded the "general acceptance" test of *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923). District courts are required to act as "gatekeepers" to make an initial determination of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology can be applied to the facts at issue. *Daubert,* 509 U.S. at 592-93. While district courts have discretion to exclude expert witnesses, they rarely do so. *See Thompson, I.G., LLC v. Edgetech I.G., Inc.,* No. 11-cv-12839, 2012 WL 3870563, at *1 (W.D. Mich. Sept. 18, 2015) ("Disqualification is a drastic measure that should be used sparingly.").

The court's gate-keeping role is two-fold. First, the court must determine whether the testimony is reliable. *Id*. at 590; *see also Greenwell v. Boatwright*, 184 F.3d 492, 496-97 (6th Cir. 1999); *United States v. Bonds*, 12 F.3d 540, 555-56 (6th Cir. 1993). The reliability analysis focuses on whether the reasoning or methodology underlying the testimony is scientifically valid. *Daubert*, 509 U.S. at 590. The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id*. The focus of the *Daubert* admissibility inquiry remains on the principles and methodology rather than the expert's conclusions. *Id.* at 594-95; *see also Superior Prod. P'ship,* 784 F.3d at 323. If the methodology, principles, and reasoning are scientifically valid, then it follows that the inferences, assertions, and conclusions derived therefrom are scientifically valid as well. *Greenwell*, 184 F.3d at 496.

4

To aid the trial court in its determination of whether an expert's testimony is reliable, the Supreme Court in *Daubert* suggested several non-exclusive factors to consider: (1) whether the theory or technique can be tested and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert*, 509 U.S. at 593-94; *see also United States v. LaVictor*, 848 F.3d 428, 441 (6th Cir. 2017). In addition, the court may consider "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk S. Ry.*, 105 F.3d 299, 303 (6th Cir.) *cert. denied,* 522 U.S. 817 (1997) quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, (on Remand), 43 F.3d 1311, 1316 (9th Cir. 1995), *cert. denied*, 516 U.S. 869 (1995).

The Supreme Court has emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the district court may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 150 (1999). The test of reliability is a "flexible" one, and the *Daubert* factors do not constitute a "definitive checklist or test," but must be tailored to the facts of the particular case. *Id*. (quoting *Daubert*, 509 U.S. at 593); *see also In re Scrap Metal Antitrust Litigation,* 527 F.3d 517, 529 (6th Cir. 2008). The particular factors will depend upon the unique circumstances of the expert testimony at issue. *Kumho Tire*, 526 U.S. at 151-52.

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant. *See Daubert*, 509 U.S. at 591-93. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. *Bonds*, 12 F.3d at 555. Thus, an expert's testimony is admissible under Rule 702 if it is predicated upon a reliable foundation and is relevant.

The rejection of expert testimony, however, is the exception rather than the rule, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702 Advisory Committee Note (amended 2000) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Clay v. Ford Motor Co.*, 215 F.3d 663, 669 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 596). The proponent of the evidence has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See* Fed. R. Evid. 104(a); *see also Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *EEOC v. Kaplan Higher Educ. Corp.*, 748 F.3d at 749, 753 (6th Cir. 2014).

As the Sixth Circuit has stated, the district courts' "function as 'gatekeepers' is ... not to second guess the validity of conclusions generated by otherwise valid methods, principles, and reasoning." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). Further, an expert is allowed "great liberty in determining the basis of his opinions," the adequacy of which "is a matter for the trier of fact to decide." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993). Thus, "mere weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the

6

evidence rather than on its admissibility." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (quoting *L.E. Cooke Co.*, 991 F.2d at 342).

Accordingly, where an expert's testimony is based on established methods, has been subject to cross-examination, and the trier of fact has considered countervailing expert testimony, there is no basis to find that the testimony should be excluded. *See Brown v. Wal-Mart Stores, Inc.*, 198 F.3d 244 (Table), 1999 WL 1111414 (6th Cir. 1999) (per curiam) ("[W]here an opposing counsel had the opportunity to cross-examine an expert witness as to a factual basis, exclusion of the testimony is generally inappropriate"); *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1014 (6th Cir. 1993) (finding no error in the admission of testimony that "was subject to cross-examination, and . . . countered by the testimony of defendants' expert").

Where, as here, the expert testimony at issue will be considered by a judge in the context of a preliminary injunction hearing, and not by a jury, the usual concerns about shielding the jury from unreliable expert testimony obviously do not arise. *Pliego v. Hayes*, No. 5:14-cv-00169, 2014 WL 6674560, at *2 (W.D. Ky. Nov. 25, 2014); *cf. Deal v. Hamilton Cnty. Bd. of Educ.,* 392 F.3d 840, 851-52 (6th Cir. 2004) ("[T]he gatekeeper doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial."); *David E. Watson, P.C. v. United States*, 668 F.3d 1008, 1015 (8th Cir. 2012) ("When the district court sits as the finder of fact, [t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself.") (internal quotation marks and citations omitted); *Attorney General of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779 (10th Cir. 2009) ("while *Daubert's* standards must still be met, the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial.")

7

Additionally, an even greater showing is required in the context of a preliminary injunction hearing. "Generally speaking, district courts within this circuit have not required stringent adherence to rules of evidence when reviewing petitions for injunctive relief and have considered [potentially inadmissible] evidence." *Fid. Brokerage Servs. LLC v. Clemens*, No. 2:13-CV-239, 2013 WL 5936671, at *5 (E.D. Tenn. Nov. 4, 2013); *see also Doe #1*, 2017 WL 1089185, at *2 ("[T]he Federal Rules of Evidence generally do not apply to preliminary injunction hearings."). The posture of a case at preliminary injunction stage thus "often does not invite the gradual development of honed evidentiary issues to which a motion in limine can apply." *Doe #1 ex rel. Lee v. Sevier Cnty., Tenn.*, No. 3:17-CV-41, 2017 WL 1026491, at *3 (E.D. Tenn. Mar. 15, 2017).

## II.     Dr. Bhattacharya's testimony is reliable

The ultimate question regarding an expert's reliability is whether that person's "knowledge of the subject matter is such that h[er] opinion will most likely assist the trier of fact in arriving at the truth." *Mannino v. Int'l Mfg. Cog.*, 650 F.2d 846, 851 (6th Cir. 1981). "Any weakness in … methodology will affect the weight that … opinion is given at trial, but not its threshold admissibility." *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009).

### A. Dr. Bhattacharya has the requisite training and experience to testify.

Plaintiffs suggest that because some of their own witnesses are board-certified physicians in clinical practice, Dr. Bhattacharya's resume must mirror theirs to qualify to offer expert testimony. Yet, as shown above, *Daubert* and its progeny refutes, rather than supports, Plaintiff's contentions. A careful review of Dr. Bhattacharya's *curriculum vitae* shows that Dr. Bhattacharya is amply qualified to testify on the efficacy and potential harms of masks and mask mandates. (*See* ECF 42-1). Even Plaintiffs' rebuttal witness, Dr. Marilyn Augustyn, conceded that Dr. Bhattacharya's credentials are impressive.

8

Dr. Bhattacharya holds two bachelor's degrees from Stanford University, an M.D. from Stanford University School of Medicine, and a Ph.D. in Economics from Stanford University Department of Economics. (*Id*. at 2). He is a Professor at Stanford University School of Medicine and has held this position for twenty years. Before that he taught in the University of California-Los Angeles Department of Economics. In his role as a professor, he has served on Ph.D. dissertation Committees in the fields of Economics, Public Policy, Epidemiology, Psychology, Health Policy, Bioinformatics, Management Services, Physics, and Education. (*Id*. at 24). Additionally, he is a three-time recipient of Stanford's Distinguished Award for Exceptional Contributions to Education in Medicine. (*Id*. at 29).

In addition to his impressive teaching credentials, Dr. Bhattacharya has held many jobs performing economic research for the past twenty years (*Id*. at 2). He is currently a Senior Fellow at the Stanford Institute for Economic Policy Research and has held this position for 8 years. Dr. Bhattacharya is currently the recipient of six research grants in medicine and health-related fields, including two grants issued by NIH in epidemiology research. (*Id*. at 25). He has also received research grants in fields including social isolation, children's health, epidemiology, health care for vulnerable populations, and particularly relevant to this case, disabilities in children and adults. (*Id*. at 25-28).

Dr. Bhattacharya is a named author of 154 peer-reviewed articles, eight books, and fifteen book chapters. His books and reports include the subjects of health economics, children's health, and public health policy. (*Id*. at 19). His published book chapters include "Risky Behavior Among Youths," "World Health Systems: Challenges and Perspectives," "Chronic Disease and Trends in Severe Disability in Working Age Populations," and "Trends in Drug Use in the Disabled Elderly." (*Id*. at 19-21). His peer-reviewed and published articles include six papers on COVID-19 and

COVID-19 policy,[1] as well such topics as health economics,[2] epidemiology and epidemiology health policy,[3] disabilities (including disabilities in youth),[4] health and nutrition issues in children,[5] several papers on obesity (which Plaintiffs identify as a risk factor for COVID that is prevalent in schools),[6] infectious disease,[7] and pediatric neurodevelopment.[8] In addition to his peer-reviewed articles, Dr. Bhattacharya's work on COVID-19 and COVID-19 policy has been included in numerous reputable publications, including the *Wall Street Journal*, *Newsweek*, *The Telegraph*, *USA Today*, and the *New York Post*. (*Id*. at 15-19).

Dr. Bhattacharya has served for years at the National Institute of Health (NIH), including as a standing member of the Health Services Organization and Delivery review panel and the Social Science and Population Studies Review Panel. (*Id*. at 21). He has also served on numerous NIH panels for the past eighteen years, including as a panel chair, and a grant review panel. (*Id*.).

In short, Dr. Bhattacharya's professional and educational experience includes research and writing on numerous fields relevant to this case: COVID-19, COVID-19 policy, epidemiology, infectious diseases, health economics, public health, health policy, disabilities (including disabilities in youth), econometrics, behaviors and development in children, children's health and nutrition, and obesity. Dr. Bhattacharya has the credentials, education, and training to speak to the issues identified in his declaration.

The deposition excerpts on which Plaintiffs rely do not counsel otherwise. Dr. Bhattacharya is not a clinician, but nothing in this case requires him to opine on a diagnosis or

---

[1] *See* ECF 42-1, Bhattacharya CV (Peer-Reviewed Articles 134, 136, 142, 144, 149, and 154).
[2] *Id*. (*See, e.g.*, Peer-Reviewed Articles 1, 2, 7, 8, 17, 25, 28, 37, 40, 41, 52, 60, 68, 76, 78, 79, 83, 92, 102, 108, and 135, and 145).
[3] *Id*. (*See, e.g.*, Peer-Reviewed Articles 6, 9, 18, 43, 46, 59, 112).
[4] *Id*. (*See, e.g.*, Peer-Reviewed Articles 19, 34, 42, 44, 55, 71, 95, 98)
[5] *Id*. (*See, e.g.*, Peer-Reviewed Articles 16, 19, 20, 56, 58, 65, 66, 84, 130)
[6] *Id*. (*See, e.g.*, Peer-Reviewed Articles 24, 31, 37, 48, 58, 71)
[7] *Id*. (*See, e.g.*, Peer-Reviewed Articles 45, 70, 73, 83)
[8] *Id*. (Peer-Reviewed Articles 94, 146).

treatment for children. Instead, as he clarified at his deposition, although he is not a board-certified pediatrician, he has published on a variety of pediatric topics, as described above. Bhattacharya Dep. 73:24-75:9); *see also* (*id.* at 115:3-14) (indicating that Dr. Bhattacharya is an expert on pediatric infection disease). Indeed, Dr. Bhattacharya indicated in his deposition that he had studied and done research on developmental pediatrics or developmental psychology, but that it was not the primary focus of his research. (Bhattacharya Dep. 65:2-22). As a health economist, M.D., and medical researcher, Dr. Bhattacharya is trained and qualified to review medical studies, interpret them, and opine on their implications for issues of public health and policy, and therefore qualified to express the views contained in his declaration.

**B. Dr. Bhattacharya's methods are reliable and based on sufficient facts and data.**

Moreover, Dr. Bhattacharya's testimony is based on reliable methods and data, primarily analysis of peer-reviewed materials and medical studies. (ECF 42, Declaration of Jay Bhattacharya, MD, Ph.D.). Medical studies are a common and recognized source of information for medical professionals, as Dr. Ker acknowledged in her testimony before the Court. Indeed, Dr. Bhattacharya's report reflects significant familiarity with studies regarding the efficacy of masking and mask mandates, as opposed to Plaintiffs' witness, Dr. Sara Cross, who was unfamiliar with studies finding that mask mandates among students are ineffective, including a study published by the CDC. Plaintiffs have provided no basis for doubting the competency of Dr. Bhattacharya's testimony on numerous issues included in his declaration, including public health procedures and considerations, COVID-19 mortality, COVID-19 hospitalization rates, or the efficacy of masks generally or of mask mandates in preventing the spread of infectious diseases, including COVID.

11

Plaintiffs focus primarily on Dr. Bhattacharya's testimony regarding potential harms from mask wearing, especially as they relate to child development. However, as indicated above, Dr. Bhattacharya is published in the fields of child development and behavior. Plaintiffs have not shown that Dr. Bhattacharya's data or methodology in drawing his conclusions was unreliable. Rather, Dr. Augustyn testified that that there is no special training in pediatric development required to understand quantitative analyses, such as the kind that both she and Dr. Bhattacharya rely on, but that such analyses can be generally understood through statistics. She further testified that papers in the field are intended to be read by a broad range of professionals, including physicians and non-medical professionals like social workers.

Notably, Dr. Augustyn agreed with Dr. Bhattacharya's statements that studies show that children perform less well recognizing emotions on faces covered with masks. Although she testified that she does not consider this measurable drop in performance a harm from masking, she acknowledged that the studies could show at least a "drawback" of universal masking. She also acknowledged that a study relied on by Dr. Bhattacharya was not merely a "convenience study" and showed that 80% of children expressed some level of discomfort or physical symptoms from masks. In short, while Dr. Augustyn indicated that she weighed the findings differently because of her views on the resilience of children, including their ability to compensate for early deficits over time, nothing in her testimony indicated that Dr. Bhattacharya was not correctly interpreting the data provided in the study; instead, her disagreements were with his conclusions drawn from the data.

Similarly, while Dr. Abaluck disagreed with certain characterizations of his findings contained in Dr. Bhattacharya's declaration, on cross, he agreed that there was no objective misunderstanding of the Bangladesh study contained in Dr. Bhattacharya's declaration. Dr.

12

Abaluck took umbrage with Dr. Bhattacharya's characterization of the "primary" result of the study, but such differences could also be attributable to the differing perspectives of the two experts in interpreting the data. While Dr. Abaluck indicated the primary finding of his study was that masking is effective (with respect to surgical masks), Dr. Bhattacharya was examining the study with respect to its application in supporting the imposition of a "universal" (with exceptions) mask-mandate in school children, and thus considered that a primary finding with respect to the issues at hand. Moreover, it is difficult to imagine how Dr. Bhattacharya's description of the ineffectiveness of cloth masks as a "primary" result of the study conflicts with the study's opening paragraph that its "objectives were to identify strategies that can persistently increase mask-wearing and assess the impact of increasing mask-wearing on symptomatic SARS-COV-2 infection." PI Exh. 23 at 2. If the "objective" is to assess the impact of increased mask-wearing on COVID-19 infections, a finding that cloth masks had no effect on symptomatic COVID-19 seems to fit within the primary findings of the study.

In summary, Dr. Bhattacharya's opinions as expressed in his declaration are based on peer-reviewed studies and Plaintiffs have offered no basis for questioning his methodology in interpreting those studies. Dr. Bhattacharya's opinions in this case are reliable.

**III.     Dr. Bhattacharya's testimony is relevant.**

Plaintiffs do not explicitly contend that Dr. Bhattacharya's testimony is irrelevant. To the extent relevancy must be addressed, Dr. Bhattacharya's testimony regarding the effectiveness and potential detriments of masking and mask mandates goes directly to the propriety of an injunction requiring a "universal" mask mandate. Plaintiffs must show that the marginal effect of the Executive Order 84 (now 89) opt out excludes them from services and programs. The efficacy of masks, especially the cloth masks generally worn by school children, is directly relevant to whether

a mask opt out has any marginal effect and whether that marginal effect is of a degree that it is likely the sole difference between school being too dangerous and reasonably safe.

Moreover, Plaintiffs' experts themselves rely on studies that do not even include children, much less exclusively include children or children with disabilities. Dr. Ker admitted that her opinions about the risk of COVID-19 to individuals with Down Syndrome were based on a study that only included adults. Similarly, Dr. Abaluck testified that his study into the effectiveness of surgical and cloth masks did not include children. *See also* (PI Hearing Exh. 23 at 14 n.5). Thus, Dr. Bhattacharya's testimony regarding the medical studies examining the efficacy of masks and mask mandates is unquestionably relevant to this case.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion in Limine to preclude or limit the testimony of Dr. Bhattacharya.

Respectfully submitted,

**HERBERT H. SLATERY III**
**ATTORNEY GENERAL AND REPORTER**

*s/ Reed N. Smith*
James R. Newsom - TN Bar No. 6683
Colleen E. Mallea - TN Bar No. 32238
Matthew Dowty - TN Bar No. 32078
Reed Smith - VA Bar No. 77334 (*Admitted PHV*)
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-9593
Jim.Newsom@ag.tn.gov
Colleen Mallea@ag.tn.gov
Matthew.Dowty@ag.tn.gov
Reed.Smith@ag.tn.gov
*Attorneys for Defendant Governor Bill Lee*

**CERTIFICATE OF SERVICE**

   I hereby certify that on October 8, 2021, a copy of the RESPONSE TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE JAY BHATTACHARYA, M.D., Ph.D. was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties and their counsel listed below. Parties may access this filing through the Court's electronic filing system.

Brice M. Timmons
Bryce W. Ashby
Craig A. Edgington
Donati Law Firm LLP
1545 Union Avenue
Memphis, TN 38104
brice@donatilaw.com
bryce@donatilaw.com
craig@donatilaw.com
*Counsel for Plaintiffs*

Gautam S. Hans
Vanderbilt Legal Clinic
Vanderbilt Law School
131 21st Avenue South
Nashville, TN 37203
Gautam.hans@vanderbilt.edu
*Counsel for Plaintiffs*

Jeffrey Dubner
Samara Spence
655 15th St. NW, Suite 800
Washington, DC 20005
jdubner@democracyforward.org
sspence@democracyforward.org
*Counsel for Plaintiffs*

Jessica F. Salonus
The Salonus Firm, PLC
139 Stonebridge Blvd.
Jackson, TN 38305
jsalonus@salonusfirm.com
*Counsel for Plaintiffs*

Justin S. Gilbert
Gilbert Law, PLC
100 W. Martin Luther King Boulevard, Suite 501
Chattanooga, TN 37402
justin@schoolandworklaw.com
*Counsel for Plaintiffs*

Courtney M. King
Lisa M. Carson
Buerger, Moseley & Carson, PLC
306 Public Square
Franklin, TN 37064
cking@buergerlaw.com
lcarson@buergerlaw.com
*Counsel for Defendant Williamson County Board of Education*

Charles W. Cagle
Lewis, Thomason, King, Krieg & Waldrop, P.C. (Nashville)
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
ccagle@lewisthomason.com
*Counsel for Defendant Franklin Special School District*


      *s/ Reed N. Smith*
      Reed N. Smith