# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| R.K., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:21-cv-00725 |
| ) | |
| GOVERNOR BILL LEE, in his official ) | Chief Judge Crenshaw |
| capacity as GOVERNOR OF TENNESSEE, *et al.*, ) | Magistrate Judge Frensley |
| ) | |
| ) | |
| Defendants. ) | |

## POST-HEARING BRIEF OF THE GOVERNOR
## IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

For the Court to enjoin Executive Order No. 84 (now 89) ("the EO"), Plaintiffs must first show that they are excluded from an educational program because of their disabilities.[1] Unless they are excluded from an educational program, they are not entitled to an accommodation. Plaintiffs must also show that the EO is the cause of their exclusion. To attribute an exclusion to the EO, Plaintiffs must show both that their schools are not reasonably safe but for the EO and that, in light of all accommodations available, only enjoining the EO will make schools reasonably safe. Otherwise, the EO does not deny Plaintiffs a reasonable accommodation. If Plaintiffs can satisfy these, they must also show that they their requested accommodation is reasonable.

Plaintiffs fall far short of showing their likelihood of success on all three elements. Plaintiffs fail to identify any educational program from which they have been denied meaningful access. Rather, the children are both attending school in person. R.K. is "participating in all daily activities" and her "school is doing a wonderful job for her education." (ECF 77, PageID 2308, 2310). Notably, although Plaintiffs bear the burden of showing they are excluded, Plaintiff J.K., an immunologist, acknowledged that she is "not prepared to" identify what level of masking is necessary during COVID because the "highest level possible is the ideal." (*See id.* at PageID 2320). Neither the Americans with Disabilities Act ("ADA") nor Section 504 of the Rehabilitation Act ("Section 504") require "the ideal" as the applicable standard for meaningful access.

Second, Plaintiffs cannot show that the EO denies them meaningful access. Neither Plaintiff has pursued COVID risk mitigation accommodations with their schools. Despite R.K. having an Individualized Education Program ("IEP") team and W.S. having a 504 team, teams

---

[1] Plaintiffs submit this brief at the Court's directive to address evidence presented at the preliminary injunction hearing. This brief is in addition to all prior arguments and authorities raised by Governor Lee in this matter and is not intended to waive or withdraw any prior submission.

devoted to evaluating and accommodating Plaintiffs' needs, neither Plaintiff parent has even discussed potential accommodations with their teams. Plaintiffs therefore cannot show that available accommodations are ineffective. Instead, Plaintiffs seek to impose their preferred accommodation, "universal" masking on all public schoolchildren in Williamson County (the "County"). Plaintiffs admit that their desired accommodation does not eliminate COVID-related risks and is not the most effective available means of reducing COVID risks (that is, virtual schooling). Even under "universal" masking, Plaintiffs will still be exposed (and willingly expose themselves at lunch) to unmasked children.

Third, *a priori*, there is no reliable scientific evidence that Plaintiffs' preferred accommodation is effective in reducing COVID transmission among students in schools. Studies of COVID transmission rates in school districts—including a CDC-published study—have found no statistically significant difference between school districts that require universal masking and those that require only faculty and staff masking. The scientific evidence does not support Plaintiffs' assertion that the EO —which speaks only to students, not faculty and staff—increases their risk of COVID infection in schools. In contrast, Plaintiffs' expert agrees that masking may impose a cost on other children by hindering their ability to read emotions.

In short, Plaintiffs have failed to demonstrate a likelihood of success in showing that Governor Lee's issuance of the EO denies them meaningful access to a public education or that they face a substantial likelihood of irreparable harm so long as the EO remains in effect. Plaintiffs' motion for preliminary injunctive relief must be denied.

### A. Plaintiffs have not met their burden to show "imminent injury" requisite for standing

To demonstrate standing, Plaintiffs' "threatened injury must be *certainly impending* to constitute injury in fact" and "[a]llegations of *possible* future injury are not sufficient." *Clapper v.*

*Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis by the Court). Accordingly, "policies … which only 'add risk to [an] ever present possibility [of injury]' do not, without more, create a threat of imminent injury." *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386 (6th Cir. 2020). Here, Plaintiffs admit that the risk of COVID infection at schools is present even if the EO is enjoined. (ECF 77, PageID 2316). Moreover, any actions that Plaintiffs prudently would take to mitigate their risk of COVID do not create injury. *Clapper*, 568 U.S. at 417 (finding that injuries are not fairly traceable to a policy when plaintiffs previously "had a similar incentive to engage in countermeasures they are now taking.").

Plaintiffs brought suit during a rise in COVID cases associated with the Delta variant. (ECF 77, Page ID 2291 ("[T]he delta variant … is why we're here.")). However, cases of COVID in the County have been falling since early September. ((Hr'g Tr. at 39); *see also* ECF 42, PageID 789). Plaintiffs first sought relief in this Court on September 17 on the basis that the County had seen a "massive spike" in COVID infections. (ECF 4-1, PageID 39). They cited data showing that the seven-day average of new infections was 332 on September 6, a "spike" that assertedly "wreaked havoc" on the County's public schools. *Id.* Yet on October 12, that metric had fallen to 56, only 17% of the previous level. (*See* https://covid19.tn.gov/data/dashboards/?County=Williamson (last accessed October 14, 2021.)

At the hearing, Plaintiff J.K. acknowledged that COVID rates in Williamson County Schools ("WCS") had dropped since the date of her declaration. (ECF 77, PageID 2339-41). Though she was not sure when it fell relative to the Court's injunction in this case, evidence shows that the rate of infection had dropped 75% from its August 27 peak by September 27, 2021, the first school day after the injunction was issued. (ECF 39, PageID 320; ECF 39-4). Accordingly, risks associated with COVID cases in the County have lessened substantially, including before

4

there was any masking requirement.

### B. Plaintiffs fail to show that the EO excludes them from any educational program.

To succeed on a failure to accommodate claim, Plaintiffs must show that they have been excluded from participation in or denied the benefits of public education in WCS or Franklin Special School District. *See Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs,* 2021 WL 2411873 at *3 (6th Cir., June 14, 2021). Here, Plaintiffs have failed to identify any way they have been excluded from public education. Both Plaintiffs attend school in person. (ECF 77, PageID 2310; ECF 70-1; Page ID 2131). Not only is R.K. "participating in all the daily activities" at her school (ECF 77, PageID 2310), but the "school is doing a wonderful job for her education." (*Id.*, PageID 2308). Similarly, W.S. has attended school in person since the beginning of the school year when FSSD had no mask requirement. (ECF 70-1, PageID 2131).

Plaintiffs may contend that that they are being constructively excluded from school due to the risk of COVID infection. In their pre-hearing briefing, Plaintiffs failed to cite any authority supporting an ADA or Section 504 constructive exclusion theory. And even if a constructive theory were viable under the statutes, Plaintiffs still have failed to identify any public program from which they are excluded or denied meaningful access. Similarly, Plaintiffs have not laid a factual predicate for such constructive denial. When Plaintiff J.K., in her role as an expert on immunology, was asked to identify what level of masking is safe, she indicated that she "was not prepared to put a number on" the level of masking among students in County schools that would be satisfactory, "[b]ecause the highest level possible is the ideal." (ECF 77, PageID 2320). However, neither the ADA nor Section 504 requires that schools meet an "ideal" standard. Plaintiffs are "entitled only to a 'reasonable' public accommodation of [their] disability, not to the 'best possible' accommodation." *Campbell v. Bd. of Educ.*, 58 F. App'x 162, 167 (6th Cir. 2003)

5

(citing *Dong v. Bd. of Educ.*, 197 F.3d 793, 800 (6th Cir. 1999)). Thus, even if "universal" masking (with medical and religious exemptions) is the "best possible" accommodation, Plaintiffs have not shown that the EO violates their rights under the ADA and Section 504 because they have not shown that it denies them a reasonable accommodation or meaningful access.

Moreover, Plaintiffs have failed to provide any evidence that the EO's marginal effect, meaning the presence of children who are unmasked because of the parental opt out, is causally related to the alleged constructive exclusion. For the EO to deny Plaintiffs a reasonable accommodation, Plaintiffs must show both that (1) a preliminary injunction against the EO will cause the affected schools to be reasonably safe to attend in person, and (2) other available accommodations cannot give Plaintiffs meaningful access unless the EO's opt-out is enjoined. *See Campbell*, 58 F. App'x at 166. Plaintiffs' fail to show a likelihood of success on both points.

Plaintiffs concede that their risk of contracting COVID at school will not be fully mitigated even if the EO is enjoined. (ECF 77, PageID 2316, 2390). Plaintiffs have claimed that "even one person coming in without a mask can have quite a lot of spread." (*Id.* at PageID 2300). But even if the EO is enjoined, unchallenged medical and religious exceptions mean that there will be unmasked children in County schools. (*Id.* at PageID 2317). Those children present the same risk of spreading COVID as any unmasked student. (*Id.* at PageID 2320). Further still, Plaintiff R.K. takes lunch with other students at her school in unmasked settings, possibly exposing herself to potential infection from other students. (*Id.* at PageID 2314). J.K. testified that "despite delta increasing" her concern that R.K. have meaningful interaction with her peers meant that she "couldn't take [R.K.'s lunch] away from her." *Id.* Thus, regardless of the EO, Plaintiffs will be exposed (and indeed willingly expose themselves) to unmasked children. Plaintiffs also acknowledge that it would be safer, in terms of risks from COVID, to opt for virtual education.

6

(*Id.* at PageID 2339). This option is available to Plaintiffs: they can opt for virtual education at any time in consultation with their 504 or IEP team. (Hr'g Tr. at 105). J.K. also exercised this option when she lied to school officials, telling them that her family had been exposed to COVID in order to move R.K. and her brothers to virtual instruction. (ECF 77, PageID 2339).

Further, nothing in evidence supports a finding that the EO renders schools unsafe, especially for Plaintiffs, much less that enjoining the EO is the only available way to render schools safe. As stated above, both Plaintiffs have either an IEP team or 504 team whose purpose is to identify appropriate accommodations for their disabilities. (ECF 77, PageID 2306; ECF 70-1, Page ID 2130-31; *see also* ECF 40, PageID 355; ECF 41, PageID 588-89). Plaintiffs admit that they have not pursued such accommodations available to them that could make schools safer for their children. In addition to foregoing virtual education, J.K. conceded that other accommodations may make school safer for R.K. These include mask mandates (subject to the EO's parental opt out), preferential seating, increasing ventilation, and creative scheduling. (ECF 77, PageID 2308-10). Other available accommodations that can help mitigate COVID risks are use of fitted N95 masks for wearer protection, plexiglass petitions, ventilation, and regular disinfection of surfaces. (*Id.*, PageID 2387-90). Nothing in the EO impairs the availability of these or other available accommodations.

### C. Plaintiffs fail to establish a threshold issue concerning their ADA and Section 504 claims because they did not request accommodations.

To prevail on a failure to accommodate claim under the ADA or Section 504, a plaintiff must request accommodation. *See Marble v. Tennessee*, 767 F. App'x 647, 652 (6th Cir. 2019) (a public entity "is generally not liable for failing to make reasonable accommodation if the plaintiff did not request accommodation"); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) (the "College was not obligated to provide accommodation until plaintiff had

7

. . . requested specific accommodation."); *see also Mbawe v. Ferris State Univ.*, 751 F. App'x 832, 840 (6th Cir. 2018) (applying the rule that "[a]n employee has the burden of proposing an initial accommodation" to a disabled student in the "educational context"). Plaintiffs have never requested enhanced masking or other accommodations designed to mitigate their risk of contracting COVID at school. When M.S. met with school administrators to develop W.S.'s 504 Plan and individualized health plan days before school began in August 2021, she did not ask the school to take any COVID mitigation measures. (ECF 70-1, PageID 2131.) Similarly, although R.K. began attending school in person in the second semester of the 2020-21 school year, J.K. has not since met with R.K.'s IEP team to request modifications or accommodations to address R.K.'s risk of contracting COVID in school. (ECF 77, PageID 2306-07.) Since Plaintiffs did not request accommodations or modifications aimed at reducing COVID-related risks before filing suit, their failure to accommodate claim should fail on the merits.

### D. Plaintiffs have not shown that their requested accommodation, mandatory masking, is effective for stopping or reducing the spread of COVID in schools.

"The hallmark of a reasonable accommodation is effectiveness." *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) (quotation omitted); *see Keller*, 2021 WL 2411873 at \*\*4-6 (citing *Wright*). A reasonable accommodation, therefore, "need not be 'perfect' or the one 'most strongly preferred' by the [ ] plaintiff," *Keller*, 2021 WL 2411873 at \*4 (quoting *Wright*, 831 F.3d at 72), but it must be effective, in that it "adequately address[es]" the disabled person's "unique needs[.]" *EEOC v. Ford Motor Co.*, 752 F.3d 634, 646 (6th Cir. 2014), *vacated en banc on other grounds*, 782 F.3d 783 (6th Cir. 2015). Plaintiffs here have not demonstrated a likelihood of success in satisfying their burden to demonstrate that their desired accommodation is effective or reasonable.

    **1.**    **Universal masking is not a reasonable accommodation because it is not**

**effective in reducing rates of COVID infection in schools.**

Dr. Jay Bhattacharya testified about multiple scientific studies that illustrate mask mandates' ineffectiveness in reducing the spread of COVID. (Hr'g Tr. at 21-39). Before COVID, many studies examined masking both as a method of wearer protection and source control with respect to similarly sized and transmitted RNA respiratory diseases, such as influenza. (*Id.* at 22-25.) Reviews of those studies concluded that masks are ineffective at stopping the spread of respiratory diseases. (*Id.* at pp. 23, 25-26); *see also* (Hr'g Ex. 26, 27). A CDC published review of these studies "did not find evidence that surgical-type face masks are effective in reducing laboratory-confirmed influenza transmission, either when worn by infected persons (source control) or by persons in the general community to reduce their susceptibility." (Hr'g Ex. 27 at 972).

Unsurprisingly, the only randomized study into the effect of masking as source control for COVID found that cloth masks had no statistically significant impact on the symptomatic seroprevalence of COVID in the population. (Hr'g Tr. at 28-29). Notably, Plaintiffs' rebuttal witness, Dr. Jason Abaluck, the lead author of the Bangladesh study, acknowledged that Dr. Bhattacharya's declaration regarding this finding is "correct as stated." (ECF 77, PageID 2499). Moreover, although the study found that wearing surgical masks resulted in the slight reduction of symptomatic seroprevalence of COVID, there was no statistically significant effect in any participant under the age of 50. (Hr'g Tr. at 30-31).

Moreover, two studies in evidence expressly examined the effectiveness of COVID responses in schools with masks mandates and those with only masking recommendations. One such study, which was published by the CDC that included over 90,000 students in Georgia, found that there was no statistically significant reduction in COVID infection rates in schools that had

9

mask mandates as opposed to those where masking was optional. (Hr'g Tr. at 36-38; Hr'g Ex. 13). This finding was further supported by a study of Florida schools that similarly found no statistically significant difference in COVID rate of schools that required students to mask as opposed to schools in which masking was optional. (Hr'g Tr. at 36-38; Ex. 14). In contrast, Plaintiffs rely on a study of North Carolina schools in which all students were required to mask. (See Hr'g Ex. 12). Plaintiffs' expert, Dr. Sara Cross acknowledged that one of the co-chairs of that study indicated it says nothing about COVID infection rates in schools where masking is not required (ECF 77, PageID 2380); *see also* (Hr'g Tr. at 39 (indicating the study "is not an appropriate study to determine whether masking was effective or not" due to the lack of any control group). Although Dr. Cross expressed an opinion that masking is effective, she acknowledged that she had not reviewed the above-cited studies which found that schools with mask mandates did not have better COVID outcomes than schools in which masks were optional for students. (ECF 77, PageID 2381-86).

### 2. Universal masking is an unreasonable accommodation because it imposes hardships on third parties.

Not only does the reliable scientific evidence fail to support the efficacy of masking requirements in schools, but both Plaintiffs' expert and the Governor's expert have expressed that mask mandates may impose costs on other children. The World Health Organization recommends against masks for all children aged five and under; and with respect to children ages 6-11, masking decisions should be based on numerous considerations, including the "potential impact of mask wearing on learning and psychological development." (Hr'g Tr. at 20; Hr'g Ex. 25) When asked about studies showing that some children have difficulty recognizing emotions when faces are masked, Dr. Augustyn expressed her view that many children may be able to overcome this obstacle, but acknowledged that "for some children, it might be a cost." (ECF 77, PageID 2440).

10

Moreover, when shown that parents and physicians reported headaches and speaking difficulties, Dr. Augustyn agreed that the study showed "a significant number of children with headache" and acknowledged that "[p]ain in children is never okay." (*Id.*, Page ID 2444). Dr. Bhattacharya similarly identified studies that indicate that covering the lower half of faces results in children being less able to recognize emotions and amplifies negative emotions. (ECF 42, PageID 807).

### E. Evidence at the Hearing Confirmed that R.K. must exhaust her administrative remedies under the IDEA.

Even if Plaintiffs do not assert an Individuals with Disabilities Education Act ("IDEA") claim, they must exhaust their administrative remedies if they seek relief under the IDEA. *See Perez v. Sturgis Pub. Sch.*, 3 F.4th 236, 242 (6th Cir. 2021). J.K. has not exhausted administrative remedies under R.K's IEP. (ECF 77, PageID 2308). However, J.K. has indicated that one of her concerns is the level of education R.K. is receiving and acknowledged that one of the reasons she has not pursued virtual education with R.K. is because it was an inferior method of instruction when compared with in-person learning. (*Id.* at PageID 2307). R.K. has an IEP, but J.K. has not pursued any COVID mitigation strategy with R.K.'s IEP team in the nearly two semesters that she has attended school in person during the since the onset of the COVID outbreak. (ECF 77, PageID 2306; 2293-94). Moreover, J.K. claims that an important part of in-school learning for R.K. is interaction with her friends and peers. (*Id.* at Page ID 2313). Interaction with other students is a part of the least restrictive environment that can be addressed in an IEP. (*Id.* at PageID 2307-08). Because J.K. raises issues that can be addressed through R.K.'s IEP and she has not exhausted her administrative remedies, the Court lacks jurisdiction over her claims.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

**HERBERT H. SLATERY III**
**ATTORNEY GENERAL AND REPORTER**

*s/ Reed N. Smith*
James R. Newsom - TN Bar No. 6683
Colleen E. Mallea - TN Bar No. 32238
Matthew Dowty - TN Bar No. 32078
Reed Smith - VA Bar No. 77334 (*Admitted PHV*)
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, TN 37202
(615) 741-9593
Jim.Newsom@ag.tn.gov
Colleen Mallea@ag.tn.gov
Matthew.Dowty@ag.tn.gov
Reed.Smith@ag.tn.gov
*Attorneys for Defendant Governor Bill Lee*

12

# CERTIFICATE OF SERVICE

       I hereby certify that on October 15, 2021, a copy of the POST-HEARING BRIEF OF THE GOVERNOR IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the parties and their counsel listed below. Parties may access this filing through the Court's electronic filing system.

Brice M. Timmons
Bryce W. Ashby
Craig A. Edgington
Donati Law Firm LLP
1545 Union Avenue
Memphis, TN 38104
brice@donatilaw.com
bryce@donatilaw.com
craig@donatilaw.com
*Counsel for Plaintiffs*

Gautam S. Hans
Vanderbilt Legal Clinic
Vanderbilt Law School
131 21st Avenue South
Nashville, TN 37203
Gautam.hans@vanderbilt.edu
*Counsel for Plaintiffs*

Jeffrey Dubner
Samara Spence
655 15th St. NW, Suite 800
Washington, DC 20005
jdubner@democracyforward.org
sspence@democracyforward.org
*Counsel for Plaintiffs*

Jessica F. Salonus
The Salonus Firm, PLC
139 Stonebridge Blvd.
Jackson, TN 38305
jsalonus@salonusfirm.com
*Counsel for Plaintiffs*

Justin S. Gilbert
Gilbert Law, PLC
100 W. Martin Luther King Boulevard, Suite 501
Chattanooga, TN 37402
justin@schoolandworklaw.com
*Counsel for Plaintiffs*

13

Courtney M. King
Lisa M. Carson
Buerger, Moseley & Carson, PLC
306 Public Square
Franklin, TN 37064
cking@buergerlaw.com
lcarson@buergerlaw.com
*Counsel for Defendant Williamson County Board of Education*

Charles W. Cagle
Lewis, Thomason, King, Krieg & Waldrop, P.C. (Nashville)
424 Church Street, Suite 2500
P.O. Box 198615
Nashville, TN 37219
ccagle@lewisthomason.com
*Counsel for Defendant Franklin Special School District*


                    *s/ Reed N. Smith*
                    Reed N. Smith