UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

---

In the Matter of R.K., by and through her mother and next friend, J.K;

and W.S., by and through her mother and next friend, M.S.,

on behalf of those similarly situated,

    Plaintiffs,

v.

GOVERNOR BILL LEE, in his official capacity as GOVERNOR OF TENNESSEE, WILLIAMSON COUNTY BOARD OF EDUCATION, and FRANKLIN SPECIAL SCHOOL DISTRICT,

    Defendants.

Case No. 3:21-cv-00725
JUDGE CRENSHAW

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR ATTORNEYS' FEES AND COSTS**

_____

**COME THE PLAINTIFFS, R.K., et al.** (hereinafter "Plaintiffs"), and hereby file this Memorandum pursuant to 42 U.S.C. § 12205 and 42 U.S.C. §1988 for an award of attorneys' fees and costs in this action. Verified billing records for this action and corroborative declarations establish both the hours reasonably expended and the reasonableness of the hourly rates for Plaintiffs' counsel.

        **I.**        **BACKGROUND**

On August 16, 2021, Governor Lee issued Executive Order No. 84 which permitted a voluntary opt-out of masking for any child in school based purely upon parental choice.

1

On September 20, 2021, Plaintiffs commenced this action to enjoin the enforcement of Executive Order 84. Plaintiffs sought injunctive relief for themselves and a class of similarly situated public-school students with disabilities who required masking of others.

On September 24, 2021, the Court issued a temporary injunction. (Doc. 30)

On September 30, 2021, notwithstanding the Court's order, Governor Lee extended Executive Order 84 through November 5, 2021.

October 5, 2021, the Court retained the temporary injunction. (Doc. 69).

On October 5 and October 13, 2021, the Court held evidentiary hearings with testimony from Dr. Sara Cross, Dr. Marilyn Augustyn, Dr. Jason Abaluck, Dr. Jay Bhattacharya, Ms. Rachel Suppé, and R.K.'s mother, J.K.

On October 22, 2021, the Court found that all factors weighed in favor of granting a preliminary injunction and enjoined Governor Lee from enforcing Executive Order 84 and then subsequently extended the order. (Doc 85).

On October 25, 2021, Governor Lee appealed to the Sixth Circuit Court of Appeals. (Doc. 87)

On November 11, 2021, Governor Lee signed Tenn. Code Ann. §14-1-104 *et seq.* into effect.

On November 19, 2021, Governor Lee's Sixth Circuit appeal was consolidated with his similar appeals from orders in the Western District of Tennessee and the Eastern District of Tennessee, respectively. (Doc. 93).

On December 10, 2021, the Sixth Circuit Court of Appeals entered a dismissal of all of the Governor's consolidated appeals which was unopposed by the Plaintiffs. (Doc. 94).

Plaintiffs have achieved the objective of enjoining Executive Order 84. That Order no longer exists, and the Governor has now voluntarily dropped all appeals. Accordingly, Plaintiffs' claim for attorneys' fees and costs is ripe for adjudication.

## II. ATTORNEYS' FEES ARE AVAILABLE FOR A PRELIMINARY INJUNCTION THAT EFFECTUATES MEANINGFUL CHANGE

Courts are authorized to award the prevailing party reasonable attorney fees as part of the costs. 42 U.S.C. § 1988(b). "[T]o be a prevailing party, the plaintiff must obtain a 'material' change in the legal relationship between [her]self and the defendant." *McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010) (quoting *Sole v. Wyner*, 551 U.S. 74, 82 (2007)).

### A. FEES FOR COURT-ORDERED CHANGE

The Sixth Circuit has set forth the rule and reasons that interim attorneys' fees following the granting of a preliminary injunction may be appropriate:

> Interim attorney fees awarded during the pendency of litigation are permissible and thus within the authority of the district court when the court has entered a concrete order that "'determines substantial rights of the parties,'" meaning "when a party has prevailed on the merits of at least some of his claims." *Hanrahan v. Hampton*, 446 U.S. 754, 757-58, 64 L. Ed. 2d 670, 100 S. Ct. 1987 (1980) (per curiam) (quoting *Bradley v. Richmond School Board*, 416 U.S. 696, 723 n.28, 40 L. Ed. 2d 476, 94 S. Ct. 2006 (1974)). Interim fees are "especially appropriate" when a party has prevailed on "an important matter" in a case, even if the party ultimately does not prevail on all issues. *Hampton*, 446 U.S. at 757 (quoting S. Rep. No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S. Code Cong. & Admin. News, 5908, 5912 (legislative history of Civil Rights Attorney's Fees Awards Act of 1976). The Supreme Court has declared that, particularly in complex cases of long duration, delaying a fee award until the conclusion of litigation "would work substantial hardship on plaintiffs and their counsel" and discourage the institution of actions that Congress intended to encourage by passage of attorney fee statutes. *Bradley*, 416 U.S. at 723.
>
> It is true that a party may be considered "prevailing" under 42 U.S.C. § 1988 when, as here, he has secured preliminary but not yet permanent injunctive relief. *See, e.g., Taylor v. City of Fort Lauderdale*, 810 F.2d 1551, 1558 (11th Cir. 1987); *Chu Drua Cha v. Levine*, 701 F.2d 750 (8th Cir. 1983).

> However, to qualify a plaintiff as "prevailing" the preliminary relief obtained must represent an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo ordered because the balance of equities greatly favors the plaintiff. *See, e.g., Laurenzo by Laurenzo v. Mississippi High School Activities Ass'n*, 708 F.2d 1038 (5th Cir. 1983) (preliminary injunction pending appeal). This second type of preliminary relief typically occurs in the granting of a temporary restraining order, but occasionally may underlie even the grant of preliminary injunctive relief. The gaining of such relief represents mere "procedural" success that does not qualify a plaintiff for attorney fees. *See Hampton*, 446 U.S. at 758-59; *Paragould Music Co. v. Paragould*, 738 F.2d 973 (8th Cir. 1984).

*Webster v. Sowders*, 846 F.2d 1032, 1036 (6th Cir. 1988); *see also Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019) (fees for obtaining preliminary injunction).

In *Tucker v. City of Fairfield*, 2006 U.S. Dist. LEXIS 16996 (S.D. Ohio Feb. 8, 2006), following *Webster*, the Court held that interim fees are appropriate where there was (1) an evidentiary hearing for a preliminary injunction; (2) with detailed findings of fact and conclusions of law by the Court; and (3) findings in favor of plaintiffs.

The Governor may argue the Executive Order, having been defeated multiple times, no longer exists (at least at the time of this filing, although the Governor could renew an Executive Order with the stroke of a pen, like he did multiple times previously). If this argument is made, it is unavailing. Prevailing party status may attend achievement of a preliminary injunction where the injunction (1) caused a change, (2) the change directly benefitted the plaintiff, and (3) the change endured. *Miller v. Caudill*, 936 F.3d 442 (6th Cir. 2019) (citing *McQueary*, 614 F.3d at 597-599). When a plaintiff "receives everything it asked for in the lawsuit, and all that moots the case is court-ordered success and the passage of time," attorney fees may be warranted. *McQueary*, 614 F.3d at 599.

By way of illustration, where "protesters seek an injunction to exercise their First Amendment rights at a specific time and place—say to demonstrate at a Saturday parade—a preliminary injunction will get them all the court-ordered relief they need and the end of the parade will moot the case." *Id.* Similarly, where a preliminary injunction *required* a court clerk to issue marriage licenses until the state general assembly voluntarily changed the law, the Plaintiffs' injunction afforded them prevailing party status. *See Miller v. Caudill, supra*; *Miller v. Davis*, 267 F. Supp. 3d 961, 981, 983 (E.D. Ky. 2017) ("The vacation of the preliminary injunction due to mootness does not revoke Plaintiffs' legal relief.")

This Middle District granted attorneys' fees for success in a preliminary injunction requiring the state of Tennessee to provide "fair hearings" in Medicaid applications. *Wilson v. Long*, 2020 U.S. Dist. LEXIS 13904, at *3 (M.D. Tenn. Jan. 28, 2020). After the preliminary injunction, the state enacted legislation codifying an appeals process. *Id*. at *4. While the legislation mooted the case, the initial change was "court-ordered," something the state was not providing *prior* to the preliminary injunction. Accordingly, Middle Tennessee hourly rates for highly experienced practitioners, including $500 and $600 per hour, were approved by Judge Campbell as "reasonable and reflect the prevailing market rate in the community." *Id*. at *24.

By contrast, where a preliminary injunction "simply made official" the state's agreement not to enforce a statute that was *already* under review by the Tennessee General Assembly, attorneys' fees were not available. *Jones v. Haynes*, 350 F. Supp. 3d 691, 696 (M.D. Tenn. 2018) (Crenshaw, J.).

## B. PLAINTIFFS REMOVED A STATE-OBSTACLE TO OBTAINING REASONABLE ACCOMMODATIONS FOR SAFETY AND HEALTH

Under the Governor's Executive Order 84, universal masking in schools was "weakened" or "nullified" by Executive Order 84, a state order permitting any parent at any school to *refuse* masking—for whatever reason. (Doc. 85, Order Granting Injunction, p. 22). This, in turn, denied students with at-risk disabilities—who require masking of others—meaningful access to their schools. (*Id*. at 25-26).

This Court delivered "court-ordered" success, finding that "[a] universal masking requirement instituted by a school is a reasonable modification that would enable disabled students to have equal access to the necessary in-person school programs, services, and activities." (*Id*. at 26). Additionally, with Executive Order 84 in effect, Plaintiffs "would remain at an increased exposure to severe illness—and possibly death—merely by accessing educational opportunities in their respective school buildings." (*Id*. at p. 33). Accordingly, Williamson County and the Franklin Special School District were returned *their authority* to make judgments about masking for their constituencies—enjoining the Executive Order frustrating them from doing so. (*Id*. at pp. 35). That authority endures today because, *after* the preliminary injunction, the Governor did not extend his Executive Order and the Governor has withdrawn his appeal.

### III. CALCULATING THE PROPER FEE AWARD

Section 504 and the ADA provide for the payment of a prevailing plaintiffs' attorneys' fees and litigation expenses. 29 U.S.C. § 794a(b); 42 U.S.C. § 12205; 42 U.S.C. § 1988(b); 28 C.F.R. § 35.175.

The Supreme Court holds that the prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Blanchard v.*

*Bergeron,* 489 U.S. 87, 89 (1989). In fact, the Court has stressed the importance of awarding attorneys' fees to prevailing parties in civil rights cases in particular, in order to encourage attorneys to act as "private attorneys-general," vindicating the most basic constitutional and congressional policies against discrimination. *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968); *see also City of Riverside v. Riveria*, 477 U.S. 561, 574 (1986); *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). All taxpayers indirectly benefit from the redress and elimination of unconstitutional statutes and practices. *See Newman,* 390 U.S. at 402; *see also Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989) ("Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large . . . ."); *Rivera,* 477 U.S. at 574 (fees in civil rights cases need not be proportionate to a monetary recovery).

### A. LODESTAR

In calculating the initial estimate of reasonable attorneys' fees, the court should use the "lodestar method," multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984). "The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount which is calculated by multiplying the number of hours reasonably expended on litigation by a reasonably hourly rate." *Imwalle v. Reliance Med. Prods. Inc.*, 515 F. 3d 531, 551 (6th Cir. 2008); *accord Hensley¸* 461 U.S. at 433. "Where the party seeking the attorney fee has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air¸* 478 U.S. 546, 564 (1986).

Of course, the Court is famously *not* called upon to become a "green-eyeshade accountant" looking for particular entries:

> [w]e emphasize, as we have before, that the determination of fees "should not result in a second major litigation." *Hensley*, 461 U.S., at 437. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid*. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 837 (2011). An attorney "is not required to record in great detail how each minute of his time was expended but should at least identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12. Even so, Plaintiffs *have* kept detailed time sheets reflecting the time and tasks.

In this case, the Plaintiffs' lawyers are Justin S. Gilbert of Gilbert Law, PLC; Jessica F. Salonus of Salonus Firm, PLC; and Bryce Ashby, Brice Timmons, and Craig Edgington of Donati Law, PLLC. They seek the following reasonable hours and rates, based upon their declarations[1] and the declarations[2] submitted in support by Heather Collins, Anne Hunter, Michael McClaren, and Brian Winfrey:

Gilbert: 118.50 hours at $500 per hour;

---

[1] Declaration of Justin S. Gilbert, attached hereto as **Exhibit A**.
Declaration of Jessica F. Salonus, attached hereto as **Exhibit B**.
Declaration of Bryce Ashby, attached hereto as **Exhibit C**.
Declaration of Brice Timmons, attached hereto as **Exhibit D**.
Declaration of Craig Edgington, attached hereto as **Exhibit E**.

[2] Declaration of Heather Collins, attached hereto as **Exhibit F**.
Declaration of Anne Hunter, attached hereto as **Exhibit G**.
Declaration of Michael McClaren, attached hereto as **Exhibit H**.
Declaration of Brian Winfrey, attached hereto as **Exhibit I**.

Salonus: 43.75 hours at $420 per hour

Ashby  136.7 hours at $420 per hour

Timmons  87.7 hours at $420 per hour

Edgington  16.0 hours at $275 per hour

### 1. The Hours Are Reasonable

The prior experience of Plaintiffs' counsel are set forth in their declarations. They have focused substantial attention to COVID-19 work as evidenced by the unparalleled success across three district courts and four decisions. *G.S. v. Lee*, 2021 U.S. Dist. LEXIS 168479 (W.D. Tenn. Sept. 3, 2021); *S.B. v. Lee*, 2021 U.S. Dist. LEXIS 195663 (E.D. Tenn. October 12, 2021); *R.K. v. Lee*, 2021 U.S. Dist. LEXIS 204078 (M.D. Tenn. Oct. 22, 2021); and *R.K. v. Lee II*, 2021 U.S. Dist. LEXIS 236817 (M.D. Tenn. Dec. 10, 2021) (*R.K. II*).

Additional experience includes, but is not limited to, exceptional experience in the area of disability law, including the ADA and Section 504 for Gilbert and Salonus; class action, employment law, and collective action experience of Ashby; routine handling of complex federal civil rights litigation inside and outside the employment context for Timmons; and civil rights and municipal government concentration by Edgington. (See Decl's of Gilbert, Salonus, Ashby, Timmons, Edgington).

### 2. The Hourly Rates Are Reasonable

**(i)** **Customary Fees**. The rates of $500 per hour for Gilbert; $420 per hour for Salonus, Timmons, and Ashby; and $275 for Edgington are reasonable and in line with the rates of the Middle District. (See Decl's of McLaren, Collins, Winfrey, and Hunter). By any measure, this case was "non-routine," requiring the lawyers to suspend their practices, learn the science of viruses; and work urgently with experts from across the country on novel issues in a pandemic.

Mr. Gilbert was last approved at $450 per hour and Ms. Salonus at $300 per hour in an ADA case involving a single-plaintiff. *B.H. v. Obion Cty. Bd. of Educ.*, 2021 U.S. Dist. LEXIS 226689, at *1 (W.D. Tenn. Nov. 24, 2021).

Mr. Ashby was last approved at $325 in 2019 on a single plaintiff race discrimination/First Amendment retaliation lawsuit. *See Goza v. MLGW*, 2019 U.S. Dist. LEXIS 182233 (W.D. Tenn. Oct. 8, 2019) *adopted by* 2019 U.S. Dist. LEXIS 193763 (W.D. Tenn. Nov. 7, 2019) (McCalla, J.).

Mr. Timmons was last approved at $420 per hour and Mr. Edgington at $275 per hour in a jail class action lawsuit. *Turnage v. Oldham*, 2021 U.S. Dist. LEXIS 239877 (W.D. Tenn. Dec. 9, 2021).

### (ii) Novelty and Difficulty

The novelty and difficulty of cases involving universal masking of students are exceptionally high. The United States has reacted comparatively poorly to the science of flattening the curve, with misinformation occurring on a daily basis and, sadly, even violence erupting outside the Williamson County Board meeting on this very subject. Misinformation from the Governor flowed constantly—about how masking was effective, yet "parents know their children best," such that Executive Order 84 was "masked" its own harmful effects. Accordingly, care was taken to utilize exceptionally well-qualified experts, including Dr. Abaluck from Yale who authored the most relevant masking study from Bangladesh.

The school districts were unhelpful at best. They were following what they referred to as "the Governor's overlay"—a purely voluntary opt-out of universal masking per Executive Order 84. The Districts believed they were *unable* to engage in truly universal masking because of Executive Order 84. The school systems took the position that a court order defeating the

Executive Order was necessary, thus requiring this swift actions by students with disabilities.

Judge Greer called the Executive Order a "paper tiger," while another animal analogy would be the tail wagging the dog. (See Gilbert Decl., ¶ 26). Yet Williamson County Schools and FSSD believed—or at least took the legal position—that they were stymied by the situation. By honoring Executive Order 84, the schools were elevating a state Governor's Order above the federal ADA. While recognizing the Supremacy Clause, at least in theory, the school systems took the position that they must have an *order* from a judge, and they could not, themselves, ignore the Governor's Executive Order. Other school districts did precisely that—ignore the Governor's Executive Order—to protect their students and staff, *e.g.* Metro Nashville, to the immediate north, but Williamson County Schools and FSSD would not. They let these students perform every bit of the heavy lifting in order for their students with disabilities, teachers and staff to have local control over universal masking in a pandemic.

The Governor offered a dug-in defense on every conceivable front, from standing, to Constitutionality, to forcing its own Tennessee Department of Education counsel to argue that administrative exhaustion was required under the Individuals with Disabilities Act. The IDEA, as part of its "free appropriate public education," requires the delivery of *special education*. 20 U.S.C. § 1401(9). "Special education," by statutory definition, is needing "specially designed *instruction*." 34 C.F.R. § 300.39(a). And to be "specially designed," the instruction must adapt the "content, methodology, or delivery of *instruction*." *Id*. at 300.39(b)(3). Obviously, wearing a mask has literally nothing to do with special education, but the Governor made this argument anyway.

The Governor also made it exceedingly difficult on Plaintiffs themselves. J.K., an immunologist with a child with Down syndrome, was asked to hypothesize about the percentage chance of her own little girl dying, with J.K., through tears, advising the Governor's counsel that his questions in support of the Executive Order were nothing short of "unconscionable." (Transcript, J.K. Page ID# 2337-39).

### (iii) Lawyer Skills Needed

This case required use of all the skills in the lawyer's toolkit: developing and maintaining client relationships, understanding civil rights law and Constitutional law, managing complex civil procedure involving state government, multiple parties (Plaintiffs and Defendants), substantial brief writing, working with state-of-the art experts; trial preparation; trial skill in presenting and cross-examining witnesses; and ability to handle a federal appeal. (See Decl's of McLaren, Collins, Winfrey).

### (iv) Preclusion of Employment

Plaintiffs' counsel set aside a significant portion of their practices to return control of masking to the local schools throughout Williamson County. By necessity, that meant foregoing new cases, seeking continuances of other cases; and working nights and weekends. *See Freudeman*, 2011 U.S. Dist. LEXIS 150023 (N.D. Ohio Dec. 30, 2011) ("Such a time-intensive case by necessity precluded the acceptance of some other work by plaintiff's counsel."); *see also* (Decl's of Gilbert, Salonus, and Ashby).

### (v) Contingent or Fixed Fee

This representation was fully contingent with no attorneys' fees advanced *at all*. Had the case not succeeded, the lawyers would have absorbed all of their time. This type of risk is rarely undertaken in such a novel case.

### (vi) Time Limitations

Time was of the essence. The nature of preliminary injunctions are urgent. Moreover, the Governor's Executive Order was preventing safe access to schools. Accordingly, Plaintiffs' counsel moved from one County (Shelby) to another (Knox) to this one (Williamson) where the two school districts, Williamson County Schools and FSSD, believed they were beholden to the Executive Order 84 and its purely voluntary opt-outs.

### (vii) Results

Plaintiffs accomplished what they set out to do: Return control of the interactive process for reasonable accommodations of universal masking to local school districts and parents of children with disabilities, removing the state impediment that Executive Order 84 presented.

**B. ENHANCEMENT IS REASONABLE AND NECESSARY FOR A CASE INVOLVING HEALTH AND SAFETY OF CHILDREN WITHOUT MONETARY DAMAGES**

Some courts have, *as part of the lodestar*, shifted the fee upwards for the contingency nature or degree of success. *See Corbin v. Steak n Shake, Inc.*, 2020 U.S. Dist. LEXIS 67776, at *20 (S.D. Ohio Apr. 17, 2020) (upward adjustment evaluated as part of lodestar assessment); *Freudeman v. Landing of Canton*, 2011 U.S. Dist. LEXIS 150023 (N.D. Ohio Dec. 30, 2011) (25% upward adjustment as part of the lodestar).

Other times, courts have considered an adjustment separate from, and in addition to the lodestar, as an "enhancement" or "multiplier." For example, the Sixth Circuit approved a 1.75 multiplier to the lodestar in *Barnes*, a case involving a transsexual, because:

> "[T]he result achieved was extraordinary and the case was highly controversial, based on the affidavits of two Cincinnati attorneys who stated that few lawyers locally or nationally would take such a case."

*Barnes v. City of Cincinnati*, 401 F.3d 729, 745-46 (6th Cir. 2005).

When the separate multiplier method is used, it is because the "lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation," or if "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted." *Perdue v. Kenny A.*, 559 U.S. 542, 553 (2010).

After *Perdue,* the Sixth Circuit has approved a 1.2 multiplier in a case involving rental car benefits based on "the contingent nature of the case and the complexity of a class action," *even though* the court "did not believe that the class members received an especially good benefit." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 500 (6th Cir. 2011). "The district court considered the relevant factors and explained its reasons for utilizing a multiplier of 1.2. We cannot conclude that the district court abused its discretion." *Id.*; *see also Johnson v. Midland Credit Mgmt.*, 2013 U.S. Dist. LEXIS 204269, at *18 (N.D. Ohio 2013) (awarding 1.2 multiplier).

The lodestars above, even though on an arguably higher end, do not adequately measure true market value and do not attract competent counsel for this type of case. That is because *not only is the case fully contingent*, and *novel*, but there is no possibility of ever recovering any damages to reward or offset the substantial and immediate outlay of time and risk. In other words, this case benefits a broad spectrum of children with disabilities—and children without disabilities who have

an interest in mitigating COVID-19—but the benefit is not monetary for which counsel can be attracted through a risk/reward sharing; the benefit is non-monetary of local school system autonomy and benefit to children's health and safety.[3]

Whether it is to capture the contingent risk and lack of damages *as part of the lodestar,* as in *Barnes,* or to capture the "attorney's true market value" from a multiplier, as in *Van Horn*, Plaintiffs' counsel request an adjustment using a 1.75 multiplier, ie.:

Gilbert: $500 x 1.75 = $875.

Salonus, Timmons, Ashby: $420 x 1.75=$735

Edgington: $275 x 1.75 = $481.25.

It is honestly questionable whether counsel would accept this uncertain value, given the risk of receiving nothing, the unlimited resources of the State, two school districts, and the Governor and state legislature constantly extending Executive Orders in an effort to defeat the Plaintiffs' reasonable accommodations.[4]

In summary, Plaintiffs' counsel have invested the following time for which they seek recovery:

| ATTORNEY | ADJUSTED RATE | HOURS | TOTAL |
|---|---|---|---|
| Gilbert | $875 | 118.50 | $103,687.50 |

---

[3] Even in common fund cases, where attorneys *are incentivized* through damages, a multiplier from 1.3 to 4.5 has been found "typical." H*osp. Auth. of Metro. Gov't v. Momenta Pharm., Inc.*, 2020 U.S. Dist. LEXIS 99546, at *5 (M.D. Tenn. May 29, 2020) (multiplier of 3.12 in approving $40,000,000).

[4] *See Berotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (awarding upward fee adjustment, in part, because Plaintiff's counsel's performance was impressive based on the size of his firm by comparison).

| | | | |
|---|---|---|---|
| Salonus | $735 | 43.75 | $32,156.25 |
| Ashby | $735 | 136.7 | $100,474.50 |
| Timmons | $735 | 87.7 | $64,459.50 |
| Edgington | $481 | 16 | $7,696.00 |

In addition, to date, Plaintiffs' counsel advanced costs reflected in Gilbert, Salonus, and Ashby Declarations which total $3,010.84.

## IV. CONCLUSION

For all these reasons, Plaintiffs request their motion for attorneys' fees and expenses be granted.

Respectfully Submitted,

**GILBERT LAW, PLC**

/s Justin S. Gilbert
Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423.756.8203
Facsimile: 423.756.2233
justin@schoolandworklaw.com


**THE SALONUS FIRM, PLC**
/s Jessica F. Salonus
JESSICA F. SALONUS (28158)
139 Stonebridge Boulevard
Jackson, Tennessee 38305
Telephone: (731) 300-0970
Facsimile: 731.256.5711
jsalonus@salonusfirm.com



**DONATI LAW, PLLC**
/s/Bryce W. Ashby
Bryce W. Ashby—TN Bar #26179
Brice M. Timmons—TN Bar #29582
Craig A. Edgington—TN Bar #38205
1545 Union Avenue
Memphis, TN 38104
Phone: 901.278.1004
Fax: 901.278.311
bryce@donatilaw.com
brice@donatilaw.com
craig@donatilaw.com

***ATTORNEYS FOR PLAINTIFFS***

## CERTIFICATE OF SERVICE

I certify that this Memorandum in Support of Motion for Attorneys Fees and Costs was served upon counsel of record at the contact information below for the Defendants, through the Court's ECF filing system on December 23, 2021.

**GOVERNOR BILL LEE**
**COMMISSIONER PENNY SCHWINN**
James R. Newsom (#6683)
Assistant Attorney General
P.O. Box 20207
Nashville, TN 37202
Telephone: 615-741-2472
Jim.newsom@ag.tn.gov
*ATTORNEY FOR GOVERNOR BILL LEE AND PENNY SCHWINN,*
*IN THEIR OFFICIAL CAPACITY*

/s/ Jessica F. Salonus

## CERTIFICATE OF CONSULTATION

I certify that Plaintiffs' counsel, Bryce Ashby, conferred with Jim Newsom regarding this motion and that Mr. Newsom's client respectfully declined to agree on this date, December 23, 2021.

/s/ Jessica F. Salonus